[No. S153170. June 24, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
TOMMY GASTELLO, Defendant and Appellant.

COUNSEL

Linnéa M. Johnson, under appointment by the Supreme Court, and Janice Wellborn, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Mary Jo Graves and Dane R. Gillette, Chief Assistant Attorneys General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Janet Neeley, Brian Alvarez and Kathleen A. McKenna, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BAXTER, J.**—This case presents issues related to those we decide today in *People v. Low* (2010) 49 Cal.4th 372 [110 Cal.Rptr.3d 640, 232 P.3d 635] (*Low*), concerning Penal Code section 4573.[1] As pertinent here, this statute, which is part of a larger scheme regulating crimes in prison and jail, makes it a felony for "any person" to "knowingly bring[]" a controlled substance into a custodial setting.

In *Low*, we conclude that the statute applies to someone who has a controlled substance in his possession when arrested for another crime, and who knowingly and voluntarily brings the drugs into jail when booked pursuant to that arrest. *Low* relies on the language and history of section 4573, and on similar statutes banning contraband in custody, to find that the statute does not exempt persons who enter jail under the specified circumstances, including arrestees.

*Low* also rejects a claim that section 4573 implicates the Fifth Amendment privilege against compulsory self-incrimination because the arrestee must choose before entering jail between admitting unlawful drug possession or violating section 4573 and risking greater penalties. As *Low* explains, a violation of section 4573 does not involve compelled self-incriminating "testimony," but rather the *nontestimonial* act of "knowingly bring[ing]" drugs into a correctional facility. The statute simply prohibits a person detained and brought to jail for one crime from entering and committing a new drug-related crime inside.

Here, the Court of Appeal reversed the section 4573 conviction for reasons that deviated from our reasoning in *Low* today. The court concluded that the statute does not apply to arrestees brought into jail with controlled substances

---

[1] All further statutory references are to the Penal Code except as otherwise stated.

secreted on their person because they are not present by choice or pursuant to an intent to smuggle drugs. The court further indicated that the statutory scheme raises concerns about self-incrimination under the Fifth Amendment insofar as it coerces arrestees to admit that they possess drugs, and punishes them more harshly if they fail to do so and instead bring the drugs into jail.

We disagree with both the reasoning and conclusions of the Court of Appeal. Under *Low*, an arrestee's "involuntary" presence in jail does not negate the elements of the crime or make prosecution unconstitutional. Section 4573 was intended to apply in this situation, such persons have a choice not to violate its terms, and strong reasons exist for not allowing arrestees to freely bring drugs into jail. The facts of this case demonstrate—perhaps even more clearly than in *Low*—that section 4573 involves no compelled incriminating testimony for Fifth Amendment purposes. Unlike in *Low*, where the defendant falsely denied possessing any drugs at the jail entrance, defendant here said nothing substantive in response to the arresting officer's warning about bringing drugs with him. Any difficulty defendant faced in making this choice was largely of his own making. He committed a nontestimonial act for which he was not immune from prosecution or conviction under section 4573.

## TRIAL COURT PROCEEDINGS

The trial concerned events that occurred in the City of Hanford on November 24, 2005, Thanksgiving night. Around 11:00 p.m., Officer Jennifer Machado was patrolling in her police car when she saw Tommy Gastello (defendant) and his adult son, Johnny, riding bicycles on a dark street. Because she saw no lights on their vehicles as required by law, Machado stopped the pair outside an apartment complex. Defendant was holding a knife in one hand as he grasped the handlebar—an act that Machado did not perceive as threatening or unlawful. However, defendant seemed agitated, and insisted that Machado justify the stop. Meanwhile, two other officers arrived. One of them spoke with Johnny.

While engaged in conversation with defendant, Officer Machado suspected that he was "hid[ing] something." He spoke at a rapid pace and made odd, spontaneous statements (e.g., "These pants don't belong to me"). Based on a preprinted card she had been trained to use for this purpose, Machado determined that defendant's pupils were too constricted and rigid for the lighting conditions. As a result, she arrested him for being under the influence of a controlled substance.[2]

---

[2] No *Miranda* warnings were given at this time. (See *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602].) Defendant subsequently admitted that, one day earlier, he had smoked marijuana laced with "ice," or methamphetamine.

For safety reasons, Officer Machado took the knife from defendant's hand. She also patted down the outside of his clothes, and looked inside his pockets and waistband for additional weapons. Nothing was found. Machado placed defendant in the patrol car, and drove him to the Kings County Jail.

Before entering the jail parking lot, Officer Machado stopped the car and looked at defendant. She said that "it was a felony to bring any narcotics, any drugs or any weapons into the jail." She asked whether he understood this statement. Defendant's only response was "yes."

Inside the jail, Officer Machado monitored the booking process. It entailed a brief medical screening, removal of defendant's outerwear, including a sweatshirt, and an inventory search of his property. In the presence of both Machado and jail staff, defendant placed his belongings on the table for inspection. All of a sudden, he warned Machado not to touch them, saying, "I have fleas. I have fleas." As she reached for his sweatshirt, defendant said, "What's that?" Machado moved the sweatshirt and saw a small bindle, wrapped in plastic, containing a crystal-like substance. Defendant remarked, "You planted that on me."

Chemical analysis revealed that the bindle found in defendant's sweatshirt held 0.32 grams of methamphetamine. The criminalist who performed the testing determined that the substance was a usable amount. In addition, a toxicologist analyzed a blood sample that had been taken from defendant in jail. The sample contained both methamphetamine and morphine. The drugs were present in sufficiently high amounts that would render the person under the influence of a controlled substance, and were consistent with "speed balling"—mixing a stimulant with a depressant for a "roller coaster" effect.

Defendant did not testify at trial. His son, Johnny, who witnessed the arrest, and defendant's wife, Kathy, who watched it from an apartment window, described the actions of the police that night. Kathy admitted that defendant had a "history" of using methamphetamine and opiates, but she did not see him take any drugs that day. Johnny, who had a prior felony conviction for drug possession, also saw no sign that defendant was under the influence of drugs before his arrest.

A jury convicted defendant, as charged, of three counts. Two of them were felonies, namely, possessing a controlled substance, methamphetamine, under Health and Safety Code section 11377, subdivision (a), and bringing a controlled substance into jail under section 4573.[3] The third count involved

---

[3] Section 4573 reads in full now, as at the time of defendant's crime, as follows: "Except when otherwise authorized by law, or when authorized by the person in charge of the prison or other institution referred to in this section or by an officer of the institution empowered by the

being under the influence of a controlled substance in violation of Health and Safety Code section 11550, subdivision (a), a misdemeanor.

In a bifurcated proceeding, defendant admitted that he sustained a prior serious felony conviction for burglary in 1994 (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) and served a prior prison term (§ 667.5, subd. (b)). At sentencing, the trial court expressed concern over defendant's long record as "a career dope addict." The court noted that while only a modest amount of methamphetamine was involved in the present case, defendant rejected an opportunity to avoid violating section 4573 by ignoring the officer's advice against bringing drugs to jail. Defendant received a total prison sentence of seven years, which included concurrent middle terms for both felony counts.

## COURT OF APPEAL DECISION

On appeal, defendant challenged his conviction under section 4573. He argued that because he was arrested and brought to jail on another charge, and because he was not present for the purpose of bringing drugs inside, he committed no criminal act and harbored no wrongful intent. Defendant further claimed that section 4573, as applied to him, violated the self-incrimination and due process clauses of the Fifth Amendment to the United States Constitution, and parallel provisions of the state Constitution. The basic theory was that he was coerced into bringing drugs into jail to avoid admitting that he unlawfully possessed them outside, and that he is being punished for exercising his right to silence absent any evidence of guilt.

In a partially published opinion, the Fifth District Court of Appeal accepted defendant's analysis and set aside the conviction. The panel made several key points in the process.

---

person in charge of the institution to give the authorization, any person, who knowingly brings or sends into, or knowingly assists in bringing into, or sending into, any state prison, prison road camp, prison forestry camp, or other prison camp or prison farm or any other place where prisoners of the state are located under the custody of prison officials, officers or employees, or into any county, city and county, or city jail, road camp, farm or other place where prisoners or inmates are located under custody of any sheriff, chief of police, peace officer, probation officer or employees, or within the grounds belonging to the institution, any controlled substance, the possession of which is prohibited by Division 10 (commencing with Section 11000) of the Health and Safety Code, any device, contrivance, instrument, or paraphernalia intended to be used for unlawfully injecting or consuming a controlled substance, is guilty of a felony punishable by imprisonment in the state prison for two, three, or four years. [¶] The prohibitions and sanctions addressed in this section shall be clearly and prominently posted outside of, and at the entrance to, the grounds of all detention facilities under the jurisdiction of, or operated by, the state or any city, county, or city and county." Methamphetamine is a controlled substance for purposes of section 4573. (See Health & Saf. Code, § 11055, subd. (d)(2).)

First, the Court of Appeal concluded that defendant did not perform any "affirmative act" proscribed by statute. The court observed that defendant was arrested for being under the influence of a controlled substance during a traffic stop, transported by patrol car to jail, and escorted inside by the arresting officer to undergo the booking process. The court further noted that defendant failed to say or do anything when told it was illegal to bring drugs inside. Defendant's role in this chain of events was described as one of pure "passivity and omission"; he reportedly *"did* nothing" defined as criminal, and merely "submit[ted] to the lawful authority of the police." According to the appellate panel, someone who *is brought* into jail in such an involuntary and submissive state does not "bring[]" drugs inside under section 4573, even if he previously secreted them on his person and knows he possesses them when he enters the facility. The court analogized this case to *Martin v. State* (1944) 31 Ala.App. 334 [17 So.2d 427] (*Martin*). There, an intoxicated man was arrested in his home and dragged by police into a public place where he used loud and profane language in violation of the law under which he was later convicted. The Court of Appeal held that here, as in *Martin*, no evidence of volitional conduct supported the act element of the crime.

Next, in a related vein, the Court of Appeal determined that defendant lacked the necessary criminal intent. The court acknowledged that section 4573 specifies only that the act of bringing a controlled substance into jail must be "knowingly" performed. The court also agreed with the People that defendant knew he possessed a controlled substance when he entered jail under arrest for another crime. Nonetheless, according to the court, such knowledge could not support a conviction because he was not present at that location by his own design: "In addition to knowing what he was carrying, defendant also had to have an intent to bring drugs into the jail. He could not have had an intent to bring drugs into jail where the going in was not pursuant to his intent at all."

Finally, the Court of Appeal implied that the pressures brought to bear on defendant as he entered jail implicated his Fifth Amendment privilege against self-incrimination. Consistent with defendant's view, the court determined that he did not willfully violate the statute because he faced an unconstitutional choice. He could either "confess" his guilt of unlawful drug possession before entering jail, or stay silent and bring a controlled substance inside. The court seemed to agree with defendant that, in light of his decision not to incriminate himself, and the ensuing compulsion to commit the "greater" crime under section 4573, defendant was being punished solely for exercising his constitutional right to silence.[4]

---

[4] In calling section 4573 the "greater" crime, and implying that possession of a controlled substance under Health and Safety Code section 11377, subdivision (a) is the "lesser" crime, the Court of Appeal may have been alluding to the different sanctions triggered by these

Shortly after the Court of Appeal issued its opinion in the present case, a petition for review was filed in *People v. Low* (Mar. 14, 2007, A112831 [nonpub. opn.], review granted June 13, 2007, S151961), a case decided by the First District Court of Appeal. We granted review in *Low* to address issues closely related to those raised and decided on appeal here, to wit, whether a section 4573 violation occurs where the defendant possesses methamphetamine when brought into jail after his arrest on other charges, and whether any constitutional bar to application of section 4573 exists under such circumstances. At the same time we granted review in *Low* and identified the issues there, we ordered review on our own motion here. We designated the People, who are represented by the Attorney General, as petitioners in this case.

ANALYSIS ON REVIEW

The Attorney General argues that the Court of Appeal misinterpreted section 4573. We agree.

■ As *Low* now confirms, the Court of Appeal erred in concluding that defendant did not commit the proscribed act. Relying on the plain statutory language, *Low* finds it immaterial that the defendant was in custody and not present by choice in jail. The critical fact is that an arrestee has the opportunity to decide whether to purge himself of hidden drugs before entering jail, or whether to bring them inside and commit a new crime under section 4573. *Low* explains that this view reflects the manner in which courts have assumed section 4573 applies and have construed similar statutes regulating jail contraband. *Low* distinguishes *Martin, supra,* 17 So.2d 427, where the defendant had no choice but to commit the crime and was forced to do so by police. Finally, according to the history discussed in *Low*, the Legislature has long viewed illegal drugs as a problem in penal institutions, and blames inmates, at least in part, for importing them. Section 4573 deters inmates from knowingly bringing controlled substances into jail from the time they first arrive as arrestees and are booked into custody.

The Court of Appeal did not discuss the evidence of legislative intent on which *Low* relied. It also adhered closely to *Martin*. The result was an unduly narrow view of what constitutes a volitional criminal act under section 4573.

■ We have similar concerns with the Court of Appeal's conclusion that defendant lacked the requisite intent. *Low* demonstrates that the proscribed act is "knowingly" performed under section 4573 where the person knew

---

violations. Section 4573 is punishable by two, three, or four years in state prison. Health and Safety Code section 11377, subdivision (a), is punishable by confinement in county jail for not more than one year, or by imprisonment for 16 months, two years, or three years. (See § 18.)

when he entered jail that he possessed a controlled substance. *Low* bases this conclusion on settled law interpreting "general intent" statutes like section 4573, particularly those involving the unlawful possession of drugs. *Low* finds no evidence in section 4573 or the surrounding scheme that the Legislature engrafted a "specific intent" element onto the statute that required the pursuit of some purpose or effect over and above the bare knowledge needed to commit the relevant act. *Low* also does not suggest that an arrestee who submits to police authority is precluded from forming the requisite knowledge with respect to any illegal drugs he possesses and brings inside at the time. Yet the Court of Appeal seemed to focus on the latter points in defining the necessary mental state and finding evidence of it lacking here. In this respect, the court again relied on an incorrect view of section 4573.

We agree with the Attorney General's further claim that the Court of Appeal erred insofar as it invalidated defendant's section 4573 conviction on constitutional grounds.

■ In setting forth the relevant principles, *Low* observes that the Fifth Amendment privilege against self-incrimination precludes the state from compelling a person to give *testimonial* evidence (i.e., communicate facts, knowledge, or beliefs) that would incriminate him in a criminal case. As *Low* observes, a violation of section 4573 is not premised on a testimonial communication, but on the nontestimonial act of "knowingly bring[ing]" prohibited drugs into a jail or prison. *Low* also rejects the argument that defendant nonetheless was officially compelled, in violation of Fifth Amendment guarantees, to enter jail with the drugs and incur additional penalties under section 4573. In purpose and effect, the statute does not operate in a compelled testimonial manner. It simply targets the willful commission of a new drug-related crime in jail.

■ For the reasons expressed in *Low*, we reject the instant Court of Appeal's suggestion that the Fifth Amendment privilege against self-incrimination was violated in the present case. Indeed, if anything, the Fifth Amendment has less relevance here than in Low's case. There, the defendant received an advisement under section 4573 and then answered a question about having drugs. Here, by contrast, defendant *remained silent* when Officer Machado warned about bringing drugs into the jail, and she asked no questions about his possession of illegal drugs. However, the critical factor here, as in *Low*, is that the statutory scheme that applied as defendant entered jail did not itself operate in a compelled testimonial manner, and did not prevent him from avoiding commission of the ensuing criminal act of bringing a controlled substance inside the facility. The Fifth Amendment privilege against compelled testimonial self-incrimination has no bearing on this case.

## Conclusion

The reasons used by the Court of Appeal to set aside defendant's conviction under section 4573 conflict with the analysis employed under closely related circumstances in *Low*, *supra*, 49 Cal.4th 372. On this basis, the judgment of the Court of Appeal is reversed insofar as it reversed defendant's conviction under section 4573. In all other respects, the judgment is affirmed.

George, C. J., Kennard, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.

Appellant's petition for a rehearing was denied August 11, 2010. George, C. J., did not participate therein.