Filed 5/25/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANDREW MARSHALL BERG,<br><br>    Defendant and Appellant. | H043511<br>(Monterey County<br>Super. Ct. No. SS151835A) |

A jury convicted defendant Andrew Marshall Berg of knowingly possessing methamphetamine in the Monterey County Jail (Pen. Code, § 4753.6, subd. (a)). Defendant argues the trial court abused its discretion by excluding evidence of defendant's voluntary intoxication at the time of his arrest almost two days before the methamphetamine was discovered. Because evidence of voluntary intoxication is inadmissible to negate the presence of general criminal intent (Pen. Code, § 29.4, subd. (a)), we will find no prejudicial error. We will modify a clerical error in the abstract of judgment and affirm the judgment as modified.

## I.    TRIAL COURT PROCEEDINGS

When defendant was searched in the Monterey County Jail almost two days after his misdemeanor arrest, a sheriff's deputy noticed plastic wrapping in between defendant's buttocks that was later found to contain methamphetamine. Defendant was charged with one felony count of knowingly possessing methamphetamine in jail. (Pen. Code, § 4573.6, subd. (a); unspecified statutory references are to this Code.)

## A. PRETRIAL MOTIONS

In the felony case, the prosecution moved in limine to exclude testimony about defendant's intoxication at the time of his arrest for the underlying misdemeanor, citing Evidence Code sections 350 and 352. According to the arresting officer's report which was summarized in the motion, the officer observed defendant cross a street with no regard for traffic and then drink from a pint-sized bottle of whiskey. Defendant smelled strongly of alcohol and had slurred speech. He was arrested for public intoxication (§ 647, subd. (f)).

In support of the motion, the prosecutor argued that because the methamphetamine was discovered almost two days after defendant entered the jail, "common knowledge" dictated that defendant had "sufficient time to be aware of what [was] going on" such that defendant's intoxication when he entered the jail was irrelevant. Defense counsel argued that the intoxication evidence was relevant to defendant's ability to be aware of the presence of contraband and that the jury should be allowed to determine how intoxication might affect his knowledge. The court granted the motion and excluded evidence of defendant's intoxication, reasoning that intoxication two days before the methamphetamine was found was minimally relevant to the issue of defendant's knowledge that he possessed the contraband when it was discovered.

Citing *People v. Low* (2010) 49 Cal.4th 372, 384 (*Low*), defendant requested the following special jury instruction: "The Defendant knew of the substance's presence and had the opportunity to voluntar[il]y relinquish it before it was located by law enforcement." The court denied the request, stating that "to say that the defendant needed an opportunity [to dispose of the contraband] ... would be asking for something that is simply not an element" of section 4573.6.

## B. TRIAL

The jail classification sergeant appeared as the custodian of records for the jail. He testified that defendant entered the jail at around 2:00 p.m. and was placed in a "safety

2

cell." A safety cell has padded walls to prevent inmates from hurting themselves, contains no furniture, and has no toilet other than a hole in the ground covered with a grate. After about 24 hours, defendant was moved to a single-occupancy cell with a sink and a toilet. The sergeant testified that a notation on a jail intake questionnaire stated defendant was uncooperative and refused to answer questions when he was moved to the single cell.

A sheriff's deputy testified that he encountered defendant roughly 48 hours after defendant entered the jail. Defendant was in the same single cell he had been transferred to 24 hours earlier. The deputy explained that inmates are placed in a single cell if there is "some kind of circumstance going on ... in which they need to be by themselves, or ... a mental issue or he's just being difficult upon intake."

The deputy escorted defendant to the booking area, where inmates change out of their civilian clothes and are given jail clothing after a visual strip search. As defendant changed out of his civilian clothes, he reached toward his "anus" and started "[d]igging, trying to push or pull something." The deputy noticed plastic wrapping between defendant's buttocks. Defendant eventually threw the plastic package onto the floor. The deputy recalled that when defendant was asked what was in the plastic, defendant sarcastically answered "to the effect of, 'Something not readily available at your local 7-Eleven.' "

The deputy unwrapped the plastic, which had feces on it, and found a bindle containing a clear crystalline substance that the deputy believed was methamphetamine based on his training and experience. The substance weighed approximately 0.2 grams, was the size of a "big pea," and looked to the deputy like it contained enough material to allow someone to snort it. A criminalist testified as an expert in controlled substance testing and confirmed that the substance contained methamphetamine.

The jury found defendant guilty as charged. The trial court sentenced defendant to the low term of two years for possessing a controlled substance in jail, finding that due to

his former military service defendant had a mental or physical condition which mitigated his culpability. (§§ 4573.6, subd. (a), 1170, subd. (h)(1).) (The abstract of judgment incorrectly indicates that the trial court imposed a middle term, which we will order modified.) The trial court ordered that one year of the sentence be served in county jail and that execution of the second year be "suspended and deemed a period of mandatory supervision" under section 1170, subdivision (h)(5)(B).

## II. DISCUSSION

To prove a violation of section 4573.6, the prosecution had to show that defendant possessed methamphetamine in the jail; defendant knew he possessed the methamphetamine; defendant knew that the methamphetamine was a controlled substance; and that the methamphetamine was in a usable amount. (§ 4573.6, subd. (a); *People v. Carrasco* (1981) 118 Cal.App.3d 936, 944–948.) We note that defendant was not charged with violating section 4573, which prohibits bringing a controlled substance into a penal institution. (§ 4573, subd. (a).)

Defendant contends the trial court abused its discretion by excluding evidence of his intoxication when he entered the jail, which he argues was relevant to whether he knowingly possessed a controlled substance in jail. We review a trial court's decision to exclude evidence under Evidence Code sections 350 and 352 for abuse of discretion. (*People v. Kelly* (1992) 1 Cal.4th 495, 523 [Evid. Code, § 350]; *People v. Thomas* (2011) 51 Cal.4th 449, 485 [Evid. Code, § 352].) Implicit in defendant's abuse of discretion argument is a contention that his intoxication was admissible to raise a reasonable doubt about the knowledge elements of section 4573.6. We requested supplemental briefing regarding whether sections 4573 and 4573.6 are general intent crimes and, if so, whether section 29.4 makes evidence of defendant's voluntary intoxication inadmissible.

### A. VOLUNTARY INTOXICATION AND GENERAL INTENT CRIMES

Defendant concedes that "Penal Code sections 4573 and 4573.6 are general intent offenses." Defendant nonetheless argues that evidence of his voluntary intoxication was

4

admissible under section 29.4 because the "classification of a crime as one of general intent has nothing to do with the required element of knowledge, a specific mental state." To reveal the flaw in defendant's argument, we begin with a brief discussion of general intent versus specific intent classification.

### 1. General Intent Crimes and Specific Intent Crimes

The Supreme Court explained the history of differentiating between general and specific intent crimes in *People v. Hood* (1969) 1 Cal.3d 444 (*Hood*). Before the 19th century, "the common law refused to give any effect to the fact that an accused committed a crime while intoxicated." (*Id.* at p. 455.) "[A]pparently troubled by this rigid traditional rule," judges began to consider whether intoxication might negate intent when intent was an element of a crime. (*Id.* at pp. 455–456.) But to keep that exculpatory doctrine from consuming the traditional rule entirely—because "some form of *mens rea* is a requisite of all but strict liability offenses"—courts began to draw a distinction between "so-called specific intent and general intent crimes." (*Id.* at p. 456.) Thereafter, voluntary intoxication was admissible regarding specific intent crimes, but not admissible regarding general intent crimes.

The *Hood* court acknowledged that specific intent and general intent "have been notoriously difficult terms to define and apply," but described general intent as: "When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence." (*Hood, supra*, 1 Cal.3d at pp. 456–457.) By contrast, when the "definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent." (*Id.* at p. 457.) To illustrate the difference, the court explained that "a drunk man is capable of forming an intent to do something simple, such as strike another," but "[w]hat he is not as capable as a sober man of doing is exercising judgment about the social consequences of his acts or controlling his impulses toward anti-social acts." (*Id.* at p. 458.) The Supreme Court has repeatedly confirmed that the "basic

5

framework that *Hood* established in designating a criminal intent as either specific or general for purposes of determining the admissibility of evidence of voluntary intoxication has survived." (*People v. Atkins* (2001) 25 Cal.4th 76, 82 (*Atkins*); *People v. Mendoza* (1998) 18 Cal.4th 1114, 1128 (*Mendoza*).)

## 2. Admissibility of Voluntary Intoxication Evidence (§ 29.4)

As the Supreme Court explained in *Hood*, classifying a crime as one of general intent or specific intent is historically linked with whether evidence of voluntary intoxication will be admissible. Section 29.4, subdivision (a) now codifies the general rule: "No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his or her having been in that condition. Evidence of voluntary intoxication shall not be admitted to negate the capacity to form any mental states for the crimes charged, including, but not limited to, purpose, intent, knowledge, premeditation, deliberation, or malice aforethought, with which the accused committed the act." An exception to the general rule of inadmissibility is found in section 29.4, subdivision (b), which provides: "Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed *a required specific intent*, or, when charged with murder, whether the defendant premeditated, deliberated, or harbored express malice aforethought." (Italics added.)

A " 'statute's plain meaning controls the court's interpretation unless its words are ambiguous.' " (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1126 (*Gonzalez*).) Applying the plain meaning of section 29.4, evidence of voluntary intoxication is only admissible when the crime with which a defendant is charged has a "required specific intent." (§ 294., subd. (b).) The Legislature juxtaposed "the capacity to form any mental states for the crimes charged" (for which evidence of voluntary intoxication is not admissible) versus evidence that a defendant "actually formed a required specific intent" (for which voluntary intoxication evidence *is* admissible). (Compare § 29.4, subds. (a) & (b).) The

6

juxtaposition reveals the legislative intent that voluntary intoxication evidence be admissible only when a specific intent crime is charged.

If a statute is ambiguous, we may consider extrinsic information, such as legislative history, the statute's purpose, and public policy. (*Gonzalez, supra*, 43 Cal.4th at p. 1126.) To the extent there is any ambiguity in the phrase "required specific intent" in section 29.4, subdivision (b), the legislative history confirms an intent to restrict voluntary intoxication evidence to specific intent crimes. Language regarding specific intent was added in 1982 to former section 22, the predecessor of section 29.4. (Stats. 1982, ch. 893, § 2, pp. 3317–3318.) As amended in 1982, former section 22, subdivision (b) stated: "Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged." (*Ibid.*) An Assembly Committee on Criminal Justice report explained that the 1982 amendments were enacted to "specifically limit [former section 22's] application to specific intent crimes." (Assem. Com. on Crim. Justice, Rep. on Sen. Bill 2035 (1981–1982 Reg. Sess.) Aug. 2, 1982, p. 1.) The text of subdivision (b) was amended to its current language in 1995. (Stats. 1995, ch. 793, § 1, p. 6149.) Although the 1995 amendment removed the explicit reference to "specific intent crimes," its legislative history makes clear that the Legislature amended the statute to abrogate *People v. Whitfield* (1994) 7 Cal.4th 437 (*Whitfield*), where the Supreme Court had determined voluntary intoxication evidence was admissible in an implied malice murder prosecution. (Legis. Counsel's Dig., Sen. Bill No. 121 (1995–1996 Reg. Sess.) ["Under existing law, as held by the California Supreme Court in [*Whitfield*], the phrase 'when a specific intent crime is charged' includes murder even where the prosecution relies on a theory of implied malice. [¶] This bill would provide, instead, that evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, or, when charged with murder, whether the defendant

7

premeditated, deliberated, or harbored express malice aforethought."]; see also *Mendoza*, *supra*, 18 Cal.4th at p. 1126 [noting the 1995 amendment "came in apparent reaction" to the court's holding in *Whitfield*].)  Former section 22 was renumbered section 29.4 in 2012, without substantive modifications relevant here.  (Stats. 2012, ch. 162, § 119, p. 2617.)

### 3.  Section 4573.6 is a General Intent Crime

Section 4573.6, subdivision (a) provides, in relevant part:  "Any person who knowingly has in his or her possession in any ... jail ... any controlled substances ... , without being authorized to so possess the same by the rules of the ... jail ... is guilty of a felony."  That section meets the *Hood* definition of a general intent crime.  It describes a particular act—possession of a controlled substance in a jail—without referring to any intent to do a further act.  (*Hood*, *supra*, 1 Cal.3d at pp. 456–457.)  Though it refers to a mental state (i.e., knowingly), our Supreme Court has explained based on a definition from the Penal Code that a knowing mental state "involves '*only* a knowledge that the facts exist which bring the act or omission within the [relevant code] provisions.' " (*Low*, *supra*, 49 Cal.4th at p. 385, quoting Pen. Code, § 7.)

Interpreting section 4573.6 as a general intent crime is consistent with the Supreme Court's treatment of similar statutes prohibiting possession of controlled substances as general intent crimes.  (See *People v. Winston* (1956) 46 Cal.2d 151, 158 ["While specific intent to violate the law is immaterial to a conviction for the unlawful possession of a narcotic, knowledge of the object's narcotic character—that is, 'knowledge that the facts exist which bring the act ... within the provisions of [the] code'—is required."]; *People v. Martin* (2001) 25 Cal.4th 1180, 1184 ["It has been observed that the statute proscribing the unlawful possession of controlled substances ... 'makes possession illegal without regard to the specific intent in possessing the substance.' "]; *Low*, *supra*, 49 Cal.4th at p. 385 [finding definition of "knowingly" as

8

used in section 4573 (which prohibits knowingly bringing controlled substances into a jail) is "consistent with the notion of general criminal intent"].)

### 4. Voluntary Intoxication Evidence is Inadmissible Under Section 29.4

As the foregoing demonstrates, section 29.4 provides that voluntary intoxication evidence is admissible only when a defendant is charged with a specific intent crime, and section 4573.6 is a general intent crime. The trial court therefore properly excluded evidence of defendant's voluntary intoxication.

Defendant paraphrases *People v. Reyes* (1997) 52 Cal.App.4th 975 (*Reyes*) to argue that "classification of a crime as one of general intent has nothing to do with the required element of knowledge, a specific mental state," and that evidence of his intoxication had "obvious relevance" to his ability to understand that he possessed a controlled substance. *Reyes* involved a prosecution for receiving stolen property (§ 496, subd. (a)), based on evidence that Reyes had stolen tools from a parked truck at night. (*Reyes,* at pp. 979–980.) Reyes testified at trial that he had smoked methamphetamine and cocaine earlier on the day of the incident, and claimed he found the stolen property on a street curb. (*Id.* at pp. 980–981.) The trial court denied a defense request to allow a psychologist to testify regarding how Reyes's mental disorders and drug use might have affected his knowledge that the property was stolen. (*Id.* at p. 981.)

On appeal from his conviction for receiving stolen property, Reyes argued that the expert testimony was admissible under former section 22. (*Reyes*, *supra*, 52 Cal.App.4th at p. 982.) At the time of Reyes's trial former section 22, subdivision (b), provided: " 'Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged.' " (*Reyes,* at p. 982, italics omitted.) The *Reyes* court concluded that "with regard to the element of knowledge, receiving stolen property is a 'specific intent crime,' as that term is used in section 22, subdivision (b)." (*Reyes*, at p. 985.) The *Reyes* court relied on *People v.*

9

*Foster* (1971) 19 Cal.App.3d 649, 655 (*Foster*), noting that the *Foster* court found evidence of intoxication admissible in a narcotics possession prosecution because " '[i]ntoxication has obvious relevance to the question of awareness, familiarity, understanding and the ability to recognize and comprehend.' " (*Reyes*, at p. 983.) The *Reyes* court also quoted a Court of Appeal opinion (that was later disapproved by the Supreme Court) for the proposition that " 'the criteria of specific intent for [the purpose of section 22] are not necessarily the same as the criteria of specific intent as a measure of the scienter required for an offense.' " (*Reyes*, at p. 984, quoting *People v. Fabris* (1995) 31 Cal.App.4th 685, 696, fn. 10, disapproved by *Atkins*, *supra*, 25 Cal.4th at p. 90, fn. 5.) And *Reyes* quoted *Whitfield*, *supra*, 7 Cal.4th 437, which the Legislature had already abrogated when *Reyes* was decided. (*Reyes*, at p. 985.)

We respectfully disagree with *Reyes* to the extent it determined that evidence of voluntary intoxication is admissible to cast doubt on the scienter element of a general intent crime like section 4573.6. *Reyes* is based on authorities that are either inapposite or no longer have precedential effect. *Fabris* and *Whitfield* are no longer binding because *Fabris* was disapproved by the Supreme Court and *Whitfield* was abrogated by the Legislature. (See *Atkins*, *supra*, 25 Cal.4th at p. 90, fn. 5; *Mendoza*, *supra*, 18 Cal.4th at p. 1126.) And *Foster* involved interpretation of a much broader voluntary intoxication statute: " 'whenever the actual existence of any particular purpose, motive, or intent is a necessary element *to constitute any particular species or degree* of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive, or intent with which he committed the act.' " (*Foster*, *supra*, 19 Cal.App.3d at p. 654, italics added.) *Foster* does not support the admissibility of voluntary intoxication evidence under the more restrictive section 29.4.

Defendant argues that evidence of voluntary intoxication "may be introduced by a defendant in order to raise a reasonable doubt regarding a specific mental state, such as knowledge, that is an element of a general intent offense." But that argument is

contradicted by the plain language of section 29.4.  And defendant's reliance on *People v. Ricardi* (1992) 9 Cal.App.4th 1427 and a general statement in the use notes to CALCRIM No. 251 is misplaced because those authorities involve specific intent crimes.

Defendant presses that because "knowledge is an element of the offenses described in Penal Code sections 4573 and 4573.6, the Legislature cannot deny appellant the opportunity to prove he did not entertain that mental state."  He is apparently urging that due process demands he be allowed to introduce evidence of his voluntary intoxication to prove he did not have the mental state necessary to be convicted under section 4573.6.  The United States Supreme Court rejected the same argument in *Montana v. Egelhoff* (1996) 518 U.S. 37, where the court (in a plurality opinion with a concurrence by Justice Ginsburg) concluded that a Montana statute making evidence of voluntary intoxication inadmissible in *all* criminal cases did not violate the Fourteenth Amendment.  (*Id.* at pp. 40–41, 56 (plur. opn. of Scalia, J.); see also *id.* at pp. 60–61 (conc. opn. of Ginsburg, J.).)  And our Supreme Court recently approved of multiple California appellate decisions that have followed the United States Supreme Court's reasoning.  (See *People v. Soto* (2018) 4 Cal.5th 968, 981 ["The Legislature has decided, for policy reasons, that evidence of voluntary intoxication is irrelevant to proof of certain mental states.  The Legislature may validly make that policy decision."].)  The trial court's decision to exclude evidence of defendant's voluntary intoxication was proper in this case involving a general intent offense like section 4573.6.

## B.  NO ABUSE OF DISCRETION

Our conclusion that evidence of defendant's voluntary intoxication was inadmissible due to section 29.4 informs our review of defendant's other arguments.  Defendant argues his intoxication was "clearly relevant to whether he was aware of the presence of the controlled substance when he entered the jail."  But defendant's awareness of the controlled substance at the time of his arrest is irrelevant because defendant was charged with possessing a controlled substance in jail (§ 4573.6), not with

11

bringing a controlled substance into a jail (§ 4573). Regardless of any potential relevance of intoxication in the abstract, defendant was not charged with a specific intent crime and evidence of voluntary intoxication cannot negate general criminal intent. (§ 29.4, subd. (a).)

Defendant argues the "issue presented by the evidence was whether having already brought the drugs into the jail unknowingly due to his significant level of intoxication upon entry, was Mr. Berg's continued possession in jail committed with the necessary requirements of knowledge and willfulness?" But defendant did not argue in the trial court or on appeal that he was still intoxicated when authorities discovered the methamphetamine nearly two days later. The lengthy interval between arrest and discovery supports the trial court's conclusion that defendant's intoxication when he entered the jail was irrelevant to the knowledge required to be convicted under section 4573.6. Given the substantial temporal separation, a trial court could reasonably conclude that the probative value of expert testimony on average alcohol metabolism rates would be substantially outweighed by the probability that such evidence would consume undue time and risk confusing the jury. (Evid. Code, § 352.)

Defendant cites *Low*, *supra*, 49 Cal.4th 372 and *People v. Gastello* (2010) 49 Cal.4th 395. In *Low*, the defendant argued unsuccessfully that section 4573— prohibiting knowingly bringing a controlled substance into a penal institution— compromised the Fifth Amendment privilege against self-incrimination because "his commission of the 'greater' crime of bringing drugs into jail under section 4573 was the compelled *testimonial* product of his decision not to admit that he was committing the 'lesser' crime of possessing drugs outside of jail." (*Low*, at pp. 390–391.) The Supreme Court rejected that argument, reasoning that "[i]ndividuals like defendant who violate section 4573 have placed themselves in this unfortunate position by secreting illegal drugs on their persons before being arrested and jailed for committing other crimes. A detainee can properly be expected to avoid knowingly bringing drugs into jail, and can be

12

punished commensurate with his culpability if he does so anyway." (*Id.* at p. 391.) *Gastello* followed *Low's* reasoning in rejecting a similar constitutional argument. (*Gastello*, at p. 403.)

Defendant argues that the rationale of *Low* supports his position because the critical fact emphasized in that case, "the defendant's opportunity to decide whether to purge himself of hidden drugs before entering jail, or whether to bring them inside and commit a new crime, presupposes the defendant knew he possessed the drugs when he entered the jail." (Underscoring omitted.) Again, section 29.4, subdivision (a) forecloses defendant's argument because evidence of voluntary intoxication cannot be used to negate scienter when a general intent crime is charged.

Defendant contends that his case is no different from a situation where a person, "due to a recent head injury or a seizure, or illness," unintentionally enters jail with a controlled substance. But those are all examples of *involuntary* impairment. A defendant charged under those facts would be entitled to an instruction regarding the effect of unconsciousness on the ability to form any mental state. (E.g., CALCRIM No. 3425 ["The defendant is not guilty of [the charged crime] if [he or she] acted while unconscious."]; see *People v. James* (2015) 238 Cal.App.4th 794, 809 ["A state of unconsciousness from whatever cause at the time of committing an alleged crime vitiates both specific and general criminal intents."].) The Legislature has made the reasonable choice to create different rules for those who suffer involuntary unconsciousness versus individuals like defendant whose altered mental state was due to voluntary behavior.

Defendant claims his inability to introduce evidence of intoxication converted section 4573.6 to a "strict liability offense." Although defendant could not rely on voluntary intoxication to dispute his knowledge of the presence of plastic packaging in his buttocks or the contents of the packaging, that did not relieve the prosecution of the burden to prove all scienter elements of section 4573.6. Defendant's argument that he was in effect strictly liable for the offense is without merit.

13

Defendant argues lastly that the purpose of section 4573.6 is to criminalize situations where an inmate obtains a controlled substance from a source inside the jail, rather than situations where a defendant possesses a controlled substance which he himself brought into the jail. Defendant cites no authority for that interpretation, and nothing in the plain language of section 4573.6 restricts its application as suggested by defendant.

## III.    DISPOSITION

The superior court is directed to prepare a corrected abstract of judgment showing that the court imposed the low term for the Penal Code section 4573.6 conviction. As so modified, the judgment is affirmed.

_____

Grover, J.

**WE CONCUR:**

_____

Premo, Acting P. J.

_____

Elia, J.

**H043511 –** *People v Berg*

| | |
|---|---|
| Trial Court: | Monterey County Superior Court, Case No.: SS151835A |
| Trial Judge: | Hon. Andrew G. Liu |
| Attorneys for Plaintiff/Respondent The People: | Xavier Becerra<br>  Attorney General of California<br>Gerald A. Engler<br>  Chief Assistant Attorney General<br>Jeffrey M. Laurence<br>  Senior Assistant Attorney General<br>Eric D. Share<br>  Supervising Deputy Attorney General .<br>Ronald E. Niver<br>  Deputy Attorney General |
| Attorneys for Defendant/Appellant Andrew Marshall Berg: | Seth Flagsberg<br>  Attorney at Law<br>  Under Appointment by the Court of Appeal |