Filed 2/24/21

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073176 |
| v. | (Super.Ct.No. FWV18003171) |
| JONATHAN BLANCO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Katrina West, Judge.  Affirmed in part; reversed in part.

Kevin J. Lindsley, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Heather B. Arambarri, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant and appellant Jonathon Blanco guilty of (1) bringing a controlled substance into a penal institution (Pen. Code, § 4573)[1]; and (2) bringing a deadly weapon into a penal institution (§ 4574, subd. (a)). The trial court found defendant had suffered a prior strike conviction. (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).) The trial court sentenced defendant to prison for a term of six years.[2]

Defendant raises two issues on appeal. First, defendant contends the trial court erred by failing to instruct the jury on the usable quantity element of the offense of bringing a controlled substance into a penal institution (Pen. Code, § 4573). Second, defendant asserts the trial court erred by denying his request for the jury to be instructed on the allegedly lesser included offense of possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)). We reverse in part and affirm in part.

## FACTUAL AND PROCEDURAL HISTORY

### A. THE PEOPLE'S CASE

On January 6, 2018, San Bernardino County Sheriff's Deputy Dennis Flagg-Martin (the deputy) was working in the intake area of the West Valley Detention Center, which is a correctional facility. In the intake area, arrestees are searched, fingerprinted, and photographed. On that date, the deputy took defendant through the intake process. The deputy asked defendant "if he had any illegal drugs or weapons on

---

[1] All subsequent statutory references will be to the Penal Code unless indicated.

[2] For each count, the trial court imposed a three-year term, doubled to six years. The trial court ordered the two six-year terms be served concurrently.

him." Defendant did not respond. Defendant was cursing at staff and not answering questions. The deputy did not believe defendant was under the influence of drugs.

The deputy searched defendant and found, in defendant's left pants pocket, a bag containing methamphetamine, a knife, and a boxcutter. With the plastic bag, the methamphetamine weighed 0.1 gram. At a later date, a San Bernardino County Sheriff's criminalist ran three different tests on the methamphetamine and confirmed it was methamphetamine. The criminalist also weighed the methamphetamine, presumably without its packaging, and it weighed 0.01 gram.[3] Deputy West testified 0.1 gram of methamphetamine is a usable amount of the drug.

B.     DEFENDANT'S CASE

Pursuant to an arrest warrant, City of Fontana Police Officer Joshua Carreon arrested defendant on January 6, 2018. Upon searching defendant, Officer Carreon

---

[3] The People assert the "0.01 gram" in the record is an error. The People assert that, at the preliminary hearing, San Bernardino County Sheriff's Deputy Evan West testified the criminalist told West the methamphetamine, without the packaging, weighed 0.1 gram. It is not clear whether the People believe that the criminalist who measured the methamphetamine misspoke during trial or that the reporter made a transcription error. To the extent the criminalist may have misspoke, no follow-up questions were asked. To the extent the reporter may have made an error in transcription, the People did not move to have the reporter's transcript corrected. (Cal. Rules of Court, rule 8.155(c); *People v. Mitchell* (1964) 61 Cal.2d 353, 371 [describing the process for correcting the record]; *People v. Gorman* (1944) 65 Cal.App.2d 482, 487 ["If there is error in the record, application to correct it must be made to the court below"].) Without such a motion, we must presume the reporter's transcript is an accurate record of the testimony. (See *People v. Hardy* (1992) 2 Cal.4th 86, 183, fn. 30 [failure to move to correct a settled statement means it is "properly part of the appellate record"]; see also *Cross v. Tustin* (1950) 96 Cal.App.2d 207, 207 [appellate "court has no power to substitute its conclusion for that of the trial court as to what occurred before that court"].) Accordingly, the reporter's transcript stands as is: the criminalist said "0.01 gram."

discovered a methamphetamine pipe in defendant's lower right pants pocket, near his shin. The pipe appeared to have been used. Officer Carreon did not believe defendant was under the influence of methamphetamine, although he may have been "coming down off methamphetamine." Officer Carreon found methamphetamine in defendant's computer bag. The methamphetamine in the computer bag was more than 0.1 gram; 0.1 gram was a usable amount of methamphetamine. Officer Carreon asked defendant "if he had anything else illegal on him, because it would be a felony if he took it to jail." Defendant did not respond to Officer Carreon. Officer Carreon drove defendant to West Valley Detention Center.

C.     JURY INSTRUCTION

After the defense rested, the trial court said a discussion about jury instructions had occurred off the record. The court explained that counsel would conduct research that evening on "the appropriate elements for an instruction on a violation of Penal Code Section 4573" because there is not a standard jury instruction corresponding to that statute.

The next day, the court again said a discussion had occurred off the record concerning jury instructions. Defense counsel said she wanted to make a record regarding the discussion; she said she had requested an instruction concerning the allegedly lesser included offense of simple possession (Health & Saf. Code, § 11377, subd. (a).) The People objected to the existence of a lesser included offense on the basis of the legal elements test. The trial court said, "The three of us researched this issue last evening, it doesn't pass the test, primarily because of the requirement that simple

4

possession entails having a usable amount and bringing a controlled substance into a jail does have not [*sic*] that element." The trial court denied defendant's request for the lesser included offense instruction.

In regard to the jury instruction for the charge of violating section 4573, the following discussion occurred:

"The Court: We've also agreed on the language that will be modified and read to the jurors as an instruction for 2747 to apply to controlled substances, correct?[4]

"[Defense Counsel]: Yes.

"[Prosecutor]: Yes.

"The Court: We've agreed on that language?

"[Defense Counsel]: Yes.

"[Prosecutor]: Yes."

For the charge of violating section 4573, the trial court instructed the jury as follows: "The defendant is charged in Count 1 with Bringing a Controlled Substance into a penal institution in violation of Penal Code section 4574 [*sic*]. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant brought a controlled substance, the possession of which is prohibited, into a penal institution, or onto the grounds of a penal institution. [¶] 2. The defendant knew that he was bringing a substance into a penal institution or onto the grounds of a penal

---

**4** CALCRIM No. 2747 is the jury instruction for bringing a deadly weapon into a penal institution (§ 4574). There is no standard jury instruction for a charge of violating section 4573. (*People v. Low* (2010) 49 Cal.4th 372, 379 (*Low*).)

institution.  [¶]  AND  [¶]  3. The defendant knew that the substance was a controlled substance.  [¶]  A *controlled substance* means a drug, substance, or immediate precursor, including methamphetamine.  [¶]  A *penal institution* is a jail where prisoners of the state prison are located under the custody of prison officials, officers, or employees.[5]  [¶]  The People do not have to prove that defendant used or intended to use the controlled substance."

### D.    CLOSING ARGUMENT

In closing argument, in regard to defendant's knowledge that he possessed methamphetamine, the prosecutor said, "And the methamphetamine, it's a small amount of methamphetamine, granted, but if you look at the packaging and the plastic wrapping that came along with that controlled substance that Deputy Flagg-Martin testified was how he pulled it out of [defendant's] pocket.  If you put your hand in there, you're going to feel that item.  So common sense tells us that the direct evidence of him having those items in his pocket means that he knew they were there.  He knew those items were located there when he was going onto that property."

During closing argument, defense counsel asserted it was possible defendant was under the influence of drugs during the arrest and booking process, and defendant may have believed Officer Carreon removed the methamphetamine, knife, and boxcutter

---

**5**  The language regarding penal institutions is taken from CALCRIM No. 2747, which concerns bringing a weapon into a penal institution.  We note the incongruity of describing a county jail as a place where "prisoners of the state prison are located under the custody of prison officials."

from his pocket.  Defense counsel asserted it was reasonable to conclude defendant was unaware he was bringing prohibited items into a penal institution.

## DISCUSSION

A.     USABLE QUANTITY INSTRUCTION

Defendant contends one of the elements of section 4573 is that the controlled substance be of an amount sufficient for use.  Defendant asserts the trial court violated his federal constitutional rights by omitting that element from the jury instruction.

"The trial court has a sua sponte duty to instruct the jury on the essential elements of the charged offense." (*People v. Merritt* (2017) 2 Cal.5th 819, 824.)  "All criminal defendants have the right to 'a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.' " (*Ibid.*)

We analyze section 4573, subdivision (a), to determine if a useable quantity is an element of the crime.  We apply the de novo standard of review.  We begin with " 'the statutory language, giving it a plain and commonsense meaning.' " (*People v. Morrison* (2019) 34 Cal.App.5th 980, 989.)  We do not examine the "language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose." (*Ibid.*)  "If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as . . . legislative history, and public policy." (*Ibid.*)

Section 4573, subdivision (a), provides, "[A]ny person, who knowingly brings or sends into . . . any county, . . . or city jail . . . any controlled substance, the possession of

7

which is prohibited by Division 10 (commencing with Section 11000) of the Health and Safety Code, any device, contrivance, instrument, or paraphernalia intended to be used for unlawfully injecting or consuming a controlled substance, is guilty of a felony."

The statute prohibits transporting "any controlled substance" into a correctional facility. The statute defines "any controlled substance" by referencing possession laws, in particular Health and Safety Code section 11000 et seq. Health and Safety Code section 11007 defines the term "controlled substance": " 'Controlled substance,' unless otherwise specified, means a drug, substance, or immediate precursor which is listed in any schedule in [Health and Safety Code s]ection 11054, 11055, 11056, 11057, or 11058." While the schedules describe quantities for some drugs, such as narcotics (Health & Saf. Code, §§ 11056, subd. (e), 11057, subd. (c)(1), 11058, subd. (c)), they do not specify quantities of stimulants such as methamphetamine (Health & Saf. Code, § 11055, subd. (d)). (Health & Saf. Code, §§ 11054-11058.)

Our Supreme Court has examined the phrase "any controlled substance" in regard to the quantity necessary to establish unlawful possession. In *People v. Leal* (1966) 64 Cal.2d 504 (*Leal*) the Supreme Court "determine[d] whether the possession of implements which bear traces of a narcotic upon them can constitute the possession of the narcotic itself within the meaning of [former] section 11500 of the Health and Safety Code. That statute prescribes heavy penalties for 'every person who possesses any narcotic other than marijuana.' " (*Id.* at p. 505, fn. omitted.)

The court explained, "[S]ome courts, reading the word 'any' in the statute as relating to the quantity of narcotic, as well as to its type, have held that the statutory ban

8

extends to the possession of even the most minute traces. Other courts . . . have reversed convictions in such cases. In part, they have relied upon the fact that [former] section 11500 proscribes only the knowing possession of narcotics. These courts have held that the inference of knowledge cannot stand if the evidence discloses only minute quantities of narcotic residues . . . . In part, too, they have evinced a fundamental doubt that the statute, properly construed, applies to the possession of narcotics so limited in quantity . . . as to be useless for narcotic purposes." (*Leal*, *supra*, 64 Cal.2d at p. 506, fn. omitted.)

The Supreme Court adopted the latter view, concluding that when "the Legislature proscribed possession of a substance that has a narcotic potential; it condemned the commodity that could be used as such. It did not refer to *useless* traces or residue of such substance. Hence the possession of a minute crystalline residue of narcotic useless for either sale or consumption . . . does not constitute sufficient evidence in itself to sustain a conviction." (*Leal*, *supra*, 64 Cal.2d at p. 512.)

In a more recent case, the Supreme Court reiterated that a usable quantity is an element of possession of a controlled substance: " 'The essential elements of unlawful possession of a controlled substance are 'dominion and control of the substance *in a quantity usable for consumption or sale*, with knowledge of its presence and of its restricted dangerous drug character.' " (*People v. Martin* (2001) 25 Cal.4th 1180, 1184, italics added.) This court has followed our high court's conclusion that a usable amount of a controlled substance is needed for a possession conviction. (*People v. Polk* (2019) 36 Cal.App.5th 340, 348-349; *People v. Hamernik* (2016) 1 Cal.App.5th 412, 423.)

Section 4573 was added to the Penal Code in 1941. (Stats. 1941, ch. 106, pp. 1080, 1126.) It has been amended throughout the decades, including in 1970 when the Legislature added "the phrase '(commencing with Section 11000)' after the phrase 'Division 10.' " (See Annotations, Matthew Bender's 1970 Standard California Codes (22nd ed.) foll. § 4573, p. 471; Stats. 1970, ch. 848, § 1, p.1580; Stats. 1959, ch. 662, § 1, p. 2637.) So the statute reads, "any controlled substance, the possession of which is prohibited by Division 10 (commencing with Section 11000) of the Health and Safety Code." (§ 4573.)

As explained *ante*, in 1966, the *Leal* court examined former Health and Safety Code section 11500 and concluded "any controlled substance," in the context of possession laws, means a usable quantity of the controlled substance. (*Leal*, *supra*, 64 Cal.2d at pp. 505, 512.) We presume that when the Legislature amended Penal Code section 4573 in 1970, to specifically refer to section 11000 et seq. of the Health and Safety Code, it was aware of the *Leal* courts' 1966 holding. (See *People v. Landry* (2016) 2 Cal.5th 52, 105 [presumption Legislature is aware of case law].) Therefore, when the Legislature wrote, in section 4573, "any controlled substance, the possession of which is prohibited by Division 10 (commencing with Section 11000) of the Health and Safety Code," it was referring to the full definition of prohibited possession, which means possession of a usable quantity of the controlled substance.

In resisting this conclusion, the People assert that section 4573 is not a possession offense and, therefore, a usable quantity of a controlled substance is not required. That conclusion fails for two reasons.

10

First, we agree section 4573 is more akin to a transportation offense than a possession offense, i.e., transporting drugs into a correctional facility.  Section 4573 prohibits "bring[ing] or send[ing] into, or knowingly assist[ing] in bringing into, or sending into, any" correctional facility any controlled substance or drug paraphernalia.  Because one can violate section 4573 by having another person transport drugs into a penal institution, it is not solely focused on possession.  As our Supreme Court has explained, "Although possession is commonly a circumstance tending to prove transportation, it is not an essential element of that offense and one may 'transport' marijuana or other drugs even though they are in the exclusive possession of another." (*People v. Rogers* (1971) 5 Cal.3d 129, 134, fn. omitted [superseded by statute on another point].)  However, a usable quantity is an element of transportation of a controlled substance.  (*People v. LaCross* (2001) 91 Cal.App.4th 182, 185; *People v. Meza* (1995) 38 Cal.App.4th 1741, 1746.)  Therefore, to the extent one labels the offense as a transportation offense, rather than a possession offense, a usable quantity is still required.

Second, section 4573 expressly defines "any controlled substance" in terms of a possession offense.  In writing section 4573, the Legislature did not simply refer to the schedules of drugs, e.g., "any controlled substance as defined in Health and Safety Code section 11000 et seq."  Rather, the Legislature specifically referred to the crime of possession.  The Legislature wrote, ". . . any controlled substance, *the possession of which is prohibited* by Division 10 (commencing with Section 11000) of the Health and Safety Code . . . ."  (§ 4573, subd. (a).)  The incorporation of the crime of possession

11

into the definition of "any controlled" substance indicates the Legislature intended a usable quantity to be an element of section 4573. If the Legislature did not want to incorporate the usable quantity element into section 4573, then it could have referred to the schedules of drugs without including the crime of possession. Because the Legislature explicitly tied the definition of the substances that could not be brought into a jail to the definition of substances the possession of which is prohibited, we conclude the Legislature intended for a usable quantity to be an element of section 4573.

Next, the People assert that under *Low*, *supra*, 49 Cal.4th 372, and *People v. Gastello* (2010) 49 Cal.4th 395, a usable quantity is not an element of section 4573. Neither case, however, addresses the issue.

In *Low*, the issue was whether section 4573 applies when contraband is discovered during the booking process. The defendant argued (1) his presence at the jail was involuntary, so section 4573 did not apply, and (2) he either had to admit to possessing methamphetamine upon arrest or bring it into the jail, which created a situation potentially violative of his right against self-incrimination. (*Low*, *supra*, 49 Cal.4th at p. 376.) In addressing the first issue raised by the defendant, the Supreme Court delved into the meanings of "any person," "brings," and "knowingly" i.e., any person who knowingly brings contraband into a detention facility. (*Id.* at pp. 381-386.) The *Low* court did not specifically address the issue of whether a usable quantity of drugs is required. However, *Low*, at page 386, did cite to *People v. Martin*, *supra*, 25 Cal.4th 1180, 1184, which is quoted *ante* and which reads, " 'The essential elements of unlawful possession of a controlled substance are 'dominion and control of the

12

substance *in a quantity usable for consumption or sale*, with knowledge of its presence and of its restricted dangerous drug character.' " (*Martin* at p. 1184, italics added.)

The Supreme Court issued the *Gastello* opinion on the same day as the opinion in *Low*. (*Low*, *supra*, 49 Cal.4th 372; *Gastello*, *supra*, 49 Cal.4th 395.) In *Gastello*, "the Court of Appeal reversed the section 4573 conviction for reasons that deviated from [the Supreme Court's] reasoning in *Low* . . . . The [Court of Appeal] concluded that the statute does not apply to arrestees brought into jail . . . . The [Court of Appeal] further indicated that the statutory scheme raises concerns about self-incrimination." (*Gastello*, at pp. 397-398.) The Supreme Court explained that the Court of Appeal erred by grafting a specific intent requirement into section 4573. (*Gastello*, at pp. 402-403.)

Because the issue of whether a usable quantity of a drug is an element of section 4573 was not raised as an issue in *Low* or *Gastello*, we do not find either case to be binding or persuasive authority on the issue of whether a usable quantity of a drug is an element of section 4573. (*People v. Belleci* (1979) 24 Cal.3d 879, 888 [" 'cases, of course, are not authority for propositions not there considered' "].)

We now turn to the issue of prejudice. "We must determine whether it is clear beyond a reasonable doubt that a rational jury would have rendered the same verdict" if it had been instructed that a usable quantity is an element of section 4573. (*People v. Merritt*, *supra*, 2 Cal.5th at p. 831.) The evidence reflects 0.1 gram of methamphetamine is a useable amount. The criminalist testified the methamphetamine possessed by defendant weighed only 0.01 gram. The deputy testified the methamphetamine with the packaging weighed 0.1 gram. Given that the

13

methamphetamine with the packaging weighed 0.1 gram, it is reasonable to conclude the methamphetamine alone (without the packaging) weighed less than 0.1 gram. Because there is evidence suggesting defendant possessed less than a usable quantity of methamphetamine, we cannot conclude beyond a reasonable doubt a rational jury would have rendered the same verdict if it had been properly instructed. Accordingly, the trial court's error was prejudicial.[6]

In resisting that conclusion, the People point to the prosecutor's argument in opposition to defendant's section 1118.1 motion, in which the prosecutor asserted she established defendant had a usable amount of methamphetamine. The People assert, "Defense counsel did not object to the prosecutor's statement, nor did she suggest at any time during the trial that the methamphetamine discovered by the deputy weighed only 0.01 grams or that appellant did not have a usable amount of methamphetamine when entering the jail."

The People's argument is not persuasive. In our harmless error analysis, we must determine whether the evidence suggests a jury would have rendered the same verdict absent the error. The jury was not present for the 1118.1 motion, and defense counsel's silence is not evidence. Further, defense counsel had no reason to argue the issue during closing because the trial court determined a usable amount was not an element of section 4573.

---

[6] As noted *ante*, there is not a standard jury instruction that corresponds to section 4573. We certified this opinion for publication to aid trial courts in drafting jury instructions in cases involving section 4573 charges. (Cal. Rules of Court, rule 8.1105(a)(4) [publication if the case clarifies a statute].)

B.     <u>LESSER INCLUDED OFFENSE</u>

Defendant contends the trial court erred by not instructing the jury on the lesser included offense of simple possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a).)  We have concluded *ante* that defendant's conviction for violating Penal Code section 4573 must be reversed.  As a result, we can provide defendant no further relief as to that conviction, which means this issue is moot.  (*People v. Alsafar* (2017) 8 Cal.App.5th 880, 886.)  Because the issue is moot, we will not address its merits.

## DISPOSITION

Defendant's conviction for violating Penal Code section 4573 is reversed, and the matter is remanded to the trial court.  In all other respects, the judgment is affirmed.

CERTIFIED FOR PUBLICATION


MILLER _____
                                                  J.


We concur:


RAMIREZ _____
                            P. J.


FIELDS _____
                            J.