Filed 1/16/24  P. v. Collins CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E078746 |
| v. | (Super.Ct.No. CR40606) |
| BRANDON TYRONE COLLINS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Mac R. Fisher, Judge.  Affirmed.

Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa A. Mandel, Stephanie H. Chow and Joseph C. Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

1

In 1992, a jury convicted defendant Brandon Tyrone Collins of first degree murder and robbery and the trial court sentenced him to state prison for 25 years to life. Inter alia, Collins's jury had been instructed on felony murder and murder under the natural and probable consequences doctrine. Since then, the Legislature eliminated the natural and probable consequences doctrine as it applies to murder. (Pen. Code,[1] § 188, subd. (a)(3), added by Sen. Bill No. 1437 (2017–2018 Reg. Sess.); Stats. 2018, ch. 1015, § 2.) In addition, the Legislature narrowed the scope of felony murder for a defendant who is not the actual killer and did not have the intent to kill, to now require the defendant to have been a major participant in the underlying offense who acted with reckless disregard for human life. (§ 189, subd. (e)(3), added by Sen. Bill No. 1437 (2017–2018 Reg. Sess.); Stats. 2018, ch. 1015, § 3.) Collins petitioned for resentencing under former section 1170.95[2] and argued he could no longer be convicted of felony murder because he was not a major participant in the robbery who acted with reckless indifference for human life. The trial court denied the petition after conducting an evidentiary hearing.

On appeal, Collins concedes he was a major participant in the robbery but argues the record of his conviction does not prove he acted with reckless indifference for human life. In addition, although he did not argue the point below, Collins argues the trial court

---

[1] All undesignated statutory references are to the Penal Code.

[2] Effective June 30, 2022, Assembly Bill No. 200 (2021-2022 Reg. Sess.) amended and renumbered section 1170.95 as section 1172.6. (Stats. 2022, ch. 58, § 10.)

was required to consider the fact he was only 22 years old at the time of the offense when deciding whether he acted with reckless indifference for human life, and that, at a minimum, we must remand for the trial court to consider that factor. We conclude substantial evidence supports the trial court's findings that Collins was a major participant in the robbery who acted with reckless indifference for the life of the victim. Even if the trial court was required to consider Collins's age, it would have made no difference. We affirm the order.

## I.

## FACTS

We take our summary of facts from this court's nonpublished decision in Collins's direct appeal in *People v. Collins et al.* (Dec. 7, 1993, E010796).[3]

According to the evidence presented at trial, in the evening of July 3, 1991, Collins and his codefendant David Earl Walker, along with 15 to 20 other people, were in the front yard of a home in Banning where they were talking, drinking, and listening to

---

[3] At the evidentiary hearing on a petition for resentencing under section 1172.6, the trial court "may . . . consider the procedural history of the case recited in any prior appellate opinion." (§ 1172.6, subd. (d)(3).) "[T]he Legislature has decided trial judges should not rely on the factual summaries contained in prior appellate decisions when a [former] section 1170.95 petition reaches the stage of a full-fledged evidentiary hearing." (*People v. Clements* (2022) 75 Cal.App.5th 276, 292 (*Clements*).)

When it conducted the hearing on Collins's petition, the trial court only considered the transcripts from his trial and an affidavit from Collins that the parties stipulated could be admitted into evidence. No other "new or additional evidence" was admitted. (§ 1172.6, subd. (d)(3).) We rely on the factual statement from our decision in the original appeal merely to provide context for the trial court's ruling and the parties' appellate arguments and do not rely on the factual statement to resolve the issues presented in this appeal.

3

music when the 77-year-old victim drove up and stopped his car in front of the house. Witnesses D.M., J.H., and A.H. lived together in the house (along with several other people, including D.M.'s grandmother) and were in the front yard on the evening in question. All three women testified at trial and stated, in pertinent part, that the victim came by the house almost every day to see L., another woman who apparently also lived at the house.

According to D.M., after the victim stopped his car by the curb, he called her over and asked her whether L. was home. D.M. testified that she sat in the passenger seat of the victim's car, apparently with the door open, and told him L. was in jail. While D.M. was in the car talking to the victim, Collins and Walker walked up to the driver's side where Collins said to the victim "something like 'give me your money.'" According to D.M., the victim started his car and tried to drive away, but before he could do so, Collins reached into the car through the driver's side window and turned off the ignition. At the same time, Walker apparently also reached inside the car and "put it in park." D.M. testified Collins hit the victim more than once (although she did not know exactly how many times) and tried to take the victim's wallets, which apparently were in the victim's rear pants pockets. While D.M. was trying to help the victim, someone hit her and knocked her out of the car, onto the ground. She did not see who hit her. From where she was lying next to the passenger side of the car, D.M. could see the victim "up in the air," apparently held by someone. She did not see how the victim was taken out of the car or who held him. Then "they dropped" the victim and his head hit the ground.

D.M.'s sister called the police who arrived a short time later, along with the paramedics. When interviewed by the police, D.M., and everyone else present at the time of the incident, identified Collins and Walker as the people "who did this" to the victim.

J.H. testified, in pertinent part, that she was at the house on the night in question. Before the victim drove up, J.H. was standing in the driveway near Collins and Walker when "they mentioned about robbing somebody, that somebody was going to give them some money . . . ." Specifically, she testified that she heard Collins say "he was going to get some money from somebody, if it had to be his mother, he was going to get him some money." After the victim drove up to the house, J.H. saw Collins and Walker go over to the victim's car. Collins reached in the window and turned off the ignition. J.H. remembered seeing Collins lean in through the driver's side window and hit the victim while telling him to hand over his money. According to J.H., while Collins was hitting the victim, Walker "was standing there for a minute. At first, he tried to pull Collins off, then he just stood there." J.H. "hollered" at them to stop hitting the victim because "he was too old . . . for them to be hitting him, jumping on him like that." According to J.H., Collins said, "Fuck him." When the victim told Collins that he did not have any money, Collins said the victim was lying and pulled him through the driver's side window and out of the car. Walker (whom J.H. referred to by the nickname "Papa") held the victim, apparently under the arms and up off the ground, while Collins went through the victim's pockets. Collins took two wallets out of the victim's pants pockets, removed the money, and threw the wallets on the street. After Collins got the wallets, J.H. heard Collins say

5

"he had the money and then Collins said, 'Let him go.' So they dropped him. So he [the victim] just like hit, hit the ground." Collins and Walker then walked away together down the street. J.H. called the paramedics.

A.H. testified she was present on the night in question, along with J.H., D.M. and others. Just before the victim drove up to the house, A.H. heard Collins and Walker say they were going to rob somebody. A.H. said she saw Collins and Walker go over to the victim's car and she heard Collins tell the victim to give Collins his money. When the victim said he did not have any money, Collins started hitting him. Unlike J.H. and D.M. who testified that Walker initially stood there while Collins hit the victim, A.H. stated Walker "[w]as like trying to get the man's wallet out of his pants." She also testified Walker or Collins (she did not know which one) threw the victim's keys out of the car and she picked them up and held them until she gave them to the police. According to A.H., Walker and Collins both pulled the victim out of the car "and let him fall to the ground. And [the victim] hit his head real hard." A.H. both saw and heard the victim's head hit the ground. She also saw Collins or Walker kick the victim while he was on the ground but she did not know which one did the kicking. After Collins and Walker ran away, A.H. went to see if the victim was hurt. According to A.H., the victim "was making this little gurgling sound, and his eyes were all back in his head. He didn't say anything, just made a little sound."

When the police and paramedics arrived, they found the victim lying in the street next to his parked car. The victim's head was in a pool of blood. He died the next day.

6

The forensic pathologist who performed the autopsy expressed the opinion that the victim died from blunt head injuries. The pathologist also testified that bruising around the victim's eyes as well as on his arms, chest, and neck, was consistent with the victim having been beaten around the face and kicked in the neck. (*People v. Collins* et al., *supra*, E010796.)

## II.

## PROCEDURAL HISTORY

In 1992, a jury convicted Collins of one count of first degree murder and one count of robbery. The trial court sentenced Collins to state prison for 25 years to life for the murder and sentenced him to the middle term of three years in prison for the robbery but stayed the latter sentence pursuant to section 654. This court affirmed the judgment on direct appeal (*People v. Collins et al.*, *supra*, E010796), and the California Supreme Court denied review on March 16, 1994, S037342.

On January 2, 2019, Collins filed a form petition for resentencing pursuant to former section 1170.95. Relevant here, the People responded that, notwithstanding the enactment of Senate Bill No. 1437, Collins was not entitled to be resentenced on his first degree murder conviction because he was either the actual killer or a major participant in the underlying robbery who acted with reckless indifference to human life. The trial court found Collins had made a prima facie case for resentencing, issued an order to show cause, and set an evidentiary hearing on the petition.

In an affidavit that was received and considered by the trial court without objection, Collins stated: (1) he and Walker "agreed to solely rob" the victim; (2) all his acts "were done only to accomplish the robbery"; (3) he committed no direct or indirect act "with the intent to harm, injure, or maime [*sic*]" the victim; (4) neither he nor Walker "possessed or used any weapon or intended to harm [the victim] beyond the act of robbery"; (5) once he had taken the money from the victim, Collins "immediately yelled, 'I got the money, let him go,'" then ran to his car; (6) at no time did Collins use force "greater than that needed to restrain [the victim] of his liberty to leave"; and (7) at no time did Collins physically position the victim in way that would "result in physical harm or danger."

During the hearing, the prosecutor argued both Collins and Walker could be found guilty beyond a reasonable doubt of first degree murder because they both qualified "as an actual killer." In addition, the prosecutor argued they both could be convicted of first degree murder because they were both major participants in the robbery who acted with reckless disregard for human life. According to the prosecutor, "both defendants agreed and participated in the robbery" and they purposely targeted the 77-year-old victim because "he was a[n] available[,] vulnerable victim." The prosecutor argued Collins and Walker "used physical force" on the victim when "[t]hey both dragged the victim out of the car" and "they both dropped him on his head, causing him to die." Both were present, willingly participated fully in the robbery, and they were "aware of what's going on." Moreover, "at any point in time, either one of the defendants could have stopped this."

8

Collins's attorney conceded it was "self-evident" from the record of conviction that Collins was a major participant in the robbery, and that the people had met their burden of proving major participation beyond a reasonable doubt. Instead, counsel argued Collins was not the actual killer and did not act with reckless disregard for human life. Counsel argued "there was a great deal of ambiguity . . . confusion and inconsistency" among the witnesses who testified at the trial "with respect to exactly what each one of them saw." Based on that "disparity" between the witnesses, counsel argued there was a reasonable doubt whether Collins was merely frisking the victim for his wallets as Walker held the victim in the air, or whether Collins helped Walker suspend the victim in the air and, after retrieving the wallets, Collins dropped or threw the victim to the ground. Although counsel conceded that after Collins took the wallets from the victim, he said to Walker, "I've got the money, Let him go, words to that effect," counsel argued "that's not acting in a reckless indifference fashion. He's got the money, it's time to go."

After hearing argument, the trial court stated it could not conclude beyond a reasonable doubt which of the two assailants, Collins or Walker, was the actual killer. However, the court found beyond a reasonable doubt that both defendants were major participants in the robbery and that they both acted with reckless indifference for human life. Therefore, the court denied Collins's petition. Collins filed his notice of appeal the same day.[4]

_____

[4] In a separate opinion, we address Walker's appeal from the simultaneous order denying his own resentencing petition. (*People v. Walker*, E078744.)

9

III.

DISCUSSION

A.     *Substantial Evidence Supports the Trial Court's Findings that Collins Was a Major Participant in the Robbery Who Acted with Reckless Disregard for Human Life.*

Collins argues the record of conviction does not establish he could be convicted today of felony murder beyond a reasonable doubt. More specifically, Collins argues the evidence did not establish he acted with reckless indifference for human life. We conclude otherwise.

1.  Applicable law and standard of review.

Effective January 1, 2019, Senate Bill 1437 (Stats. 2018, ch. 1015, §§ 2-3) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and narrowed the felony-murder exception to the malice requirement for murder. (§§ 188, subd. (a)(3), 189, subd. (e); *People v. Lewis* (2021) 11 Cal.5th 952, 957; see *People v. Strong* (2022) 13 Cal.5th 698, 707-708 (*Strong*); *People v. Gentile* (2020) 10 Cal.5th 830, 842-843.) Section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice for a murder conviction, except under the revised felony-murder rule in section 189, subdivision (e).

"Senate Bill [No.] 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended." (*Strong*, *supra*, 13 Cal.5th at p. 708.) Unless the parties stipulate that the defendant is

10

eligible for resentencing, the court must "hold an evidentiary hearing at which the prosecution bears the burden of proving, 'beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder' under state law as amended by Senate Bill [No.] 1437. (§ 1172.6, subd. (d)(3).)" (*Strong*, at p. 709.)

At the hearing, the court may consider previously admitted evidence, so long as it remains "admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion." (§ 1172.6, subd. (d)(3).) The parties may offer new or additional evidence to meet their respective burdens. "'A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' [Citation.] 'If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges.'" (*Strong*, *supra*, 13 Cal.5th at p. 709.)

"Defendants who were neither actual killers nor acted with the intent to kill can be held liable for murder only if they were 'major participant[s] in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of . . . [s]ection 190.2'—that is, the statute defining the felony-murder special circumstance." (*Strong*, *supra*, 13 Cal.5th at p. 708; see § 189, subd. (e)(3).) By tethering the definition of "major participant" and "reckless indifference" to the felony-murder special

11

circumstance (§ 190.2, subds. (a)(17), (d)), the felony-murder statute under section 189, subdivision (e)(3), now incorporates the clarification given to those concepts by *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).

Section 190.2, subdivision (d), "'imposes both a special actus reus requirement, major participation in the crime, and a specific mens rea requirement, reckless indifference to human life.' (*Banks*, *supra*, 61 Cal.4th at p. 798.) '"These requirements significantly overlap . . . for the greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life."' (*Clark*, *supra*, 63 Cal.4th at p. 615.)" (*In re Harper* (2022) 76 Cal.App.5th 450, 458.) "[I]n *Banks*, *supra*, 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522 our Supreme Court 'clarified the meaning of the special circumstances statute.' (*In re Scoggins* (2020) 9 Cal.5th 667, 671.) In *Banks*, the court held a 'major participant' in a robbery is someone whose 'personal involvement' is 'substantial' and 'greater than the actions of an ordinary aider and abettor . . . .' (*Banks*, *supra*, 61 Cal.4th at p. 802.) However, he or she 'need not be the ringleader.' (*People v. Williams* (2015) 61 Cal.4th 1244, 1281, cited with approval in *Clark*, at pp. 614, 619.)" (*In re Harper*, at p. 459.)

"Determining whether a defendant was a major participant requires consideration of the totality of the circumstances. (*Banks*, *supra*, 61 Cal.4th at p. 802.) *Banks* identified five nonexclusive factors for evaluating the extent of a defendant's participation: '[(1)] What role did the defendant have in planning the criminal enterprise that led to one or more deaths? [(2)] What role did the defendant have in supplying or

12

using lethal weapons?  [(3)] What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?  [(4)] Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?  [and (5)] What did the defendant do after lethal force was used?'  (*Id*. at p. 803, fn. omitted.)  None of the factors the court expressly articulated is necessary or necessarily sufficient, and all must be weighed in determining the ultimate question of 'whether the defendant's participation "in criminal activities known to carry a grave risk of death" [citation] was sufficiently significant to be considered "major."'  (*Id*. at p. 803.)"  (*In re Harper*, *supra*, 76 Cal.App.5th at p. 459, fn. omitted.)

"In *Clark*, the court noted reckless indifference to human life 'may be "implicit in knowingly engaging in criminal activities known to carry a grave risk of death."'  (*Clark*, *supra*, 63 Cal.4th at p. 616.)  '"[T]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed," and he or she must consciously disregard "the significant risk of death his or her actions create."'  (*In re Scoggins*, *supra*, 9 Cal.5th at p. 677, quoting *Banks*, *supra*, 61 Cal.4th at p. 801 and citing *Clark*, at p. 617.)  However, the court cautioned that merely participating in an armed robbery is not enough to show reckless indifference to human life.  (*Clark*, at pp. 615-616, 623; accord, *In re Scoggins*, at p. 677; *Banks*, at pp. 808, 810.)"  (*In re Harper*, *supra*, 76 Cal.App.5th at p. 459.)

"Courts must view the totality of the circumstances to determine whether the defendant acted with reckless indifference to human life.  (*In re Scoggins*, *supra*, 9 Cal.5th at p. 677.)  *Clark* identified five relevant, but nonexclusive, factors for evaluating this subjective requirement: (1) the 'defendant's awareness that a gun [or other deadly weapon] will be used,' whether the defendant personally used a lethal weapon, and the number of lethal weapons used; (2) the defendant's '[p]roximity to the murder and the events leading up to it' and opportunity to either restrain the crime or aid the victim; (3) whether the murder took place[] 'at the end of a prolonged period of restraint of the victim[] by the defendant'; (4) the 'defendant's knowledge of . . . a cohort's likelihood of killing'; and (5) whether the defendant made an 'effort[] to minimize the risks of violence in the commission of a felony . . . .'  (*Clark*, *supra*, 63 Cal.4th at pp. 618-622.)  Again, no single factor is necessary, nor is any one necessarily sufficient.  (*Id*. at p. 618.)"  (*In re Harper*, *supra*, 76 Cal.App.5th at p. 460.)

"Ordinarily, a trial court's denial of a section 1172.6 petition is reviewed for substantial evidence."  (*People v.  Reyes* (2023) 14 Cal.5th 981, 988; accord, *Clements*, *supra*, 75 Cal.App.5th at p. 298.)  "Under this standard, we review the record ""'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'"""  (*Reyes*, at p. 988.)  "[O]ur job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a

14

reasonable doubt." (*Clements*, at p. 298.) "'We presume, in support of the judgment, the existence of every fact the trier of fact could reasonably deduce from the evidence, whether direct or circumstantial.'" (*In re Harper*, *supra*, 76 Cal.App.5th at p. 460, quoting *Clark*, *supra*, 63 Cal.4th at p. 610.) We do not resolve credibility issues or conflicts in the evidence. (*People v. Schell* (2022) 84 Cal.App.5th 437, 442.) "Moreover, '"[t]he uncorroborated testimony of a single witness is sufficient to sustain a conviction, unless the testimony is physically impossible or inherently improbable."'" (*People v. Oliver* (2023) 90 Cal.App.5th 466, 484 (*Oliver*), quoting *People v. Panah* (2005) 35 Cal.4th 395, 489.)

        2.      Substantial evidence supports the trial court's finding that Collins was a major participant in the robbery.

As he did below, on appeal Collins concedes he was a major participant in the robbery. "Even though [Collins] concedes he was a major participant, we briefly address the major participant factors enumerated in *Banks* . . . because there is a 'significant[] overlap' in the requirements for being a major participant in a dangerous felony and acting with reckless indifference to human life. (*Clark*, *supra*, 63 Cal.4th at pp. 614-615.) '"[T]he greater the [defendant's] participation in the felony murder, the more likely that he acted with reckless indifference to human life."' (*Id*. at p. 615.)" (*People v. Owens* (2022) 78 Cal.App.5th 1015, 1023; accord, *People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1089 ["[T]hough Bascomb concedes he was a major participant, it's

15

still important to evaluating whether he acted with reckless disregard for human life that he admitted planning the robbery."].)

For the first *Banks* factor, the evidence demonstrates Collins played a key role in planning the robbery that resulted in the victim's death. (*Banks*, *supra*, 61 Cal.4th at p. 803.) In his affidavit submitted for the resentencing hearing Collins stated that he and Walker agreed to rob the victim and acted according to that agreement.[5] The trial testimony supports this because both assailants were overheard saying they wanted to rob "somebody."[6] And, as soon as the victim arrived in his vehicle, the two approached the victim and Collins demanded his money.

The second factor considers what role Collins played in supplying or using deadly weapons. (*Banks*, *supra*, 61 Cal.4th at p. 803.) Consistent with the evidence presented at trial, Collins stated in his affidavit neither he nor Walker possessed or used any weapon during the robbery. At the hearing on Collins's petition, the district attorney conceded no weapons were used and that the second *Clark* factor is "a neutral factor." We agree.

For the third factor, the evidence, and the reasonable inferences to be drawn from it, amply demonstrate Collins was aware of the "particular dangers posed" by the robbery. (*Banks*, *supra*, 61 Cal.4th at p. 803.) As the district attorney argued below, Collins and Walker apparently chose an "elderly" and "frail" victim to rob, instead of a

---

[5] As noted in our separate opinion in Walker's appeal, Walker adamantly denied Collins's statement that they both agreed to the robbery. (*People v. Walker*, E078744.)

[6] A.H. testified she heard Collins and Walker say they were going to rob "somebody." But, when asked by the prosecutor if Collins and Walker said "they were going to rob *that* man," A.H. answered, "Yes, yes." (Italics added.)

16

"young, strong, [and] healthy" victim "who could fight back." The victim was 77 years old, 5 feet 4 inches in height, and only weighed 149 pounds. While Collins was hitting the victim, J.H. told him to "stop because he was too old." Collins callously responded, "Fuck him."

Next, the evidence demonstrates Collins was present during the killing, he was "in a position to facilitate" the killing, and his actions played a crucial role in the killing. (*Banks*, *supra*, 61 Cal.4th at p. 803.) By his own admission Collins participated in the robbery and, therefore, he was present on the scene of the killing. Although Collins stated he only used enough force to restrain the victim while robbing him, the evidence shows that, after Collins punched the victim through the driver's side window, he pulled the victim from his car and he and Walker held the victim up from under his arms and feet while Collins rifled the victim's pockets.[7] After relieving the victim of his wallets, Collins said, "he [Collins] had the money." Collins then told Walker, "Let him go," or "*Drop* him."[8] (Italics added.) When they simultaneously let go, the victim fell and hit the back of his head on the concrete "real hard."

Last, Collins's actions after the use of lethal force amply demonstrate he was a major participant in the robbery. (*Banks*, *supra*, 61 Cal.4th at p. 803.) Two witnesses testified that either Collins or Walker kicked the victim when he was on the ground. As

---

[7] Only A.H. testified that both Collins and Walker dragged the victim from the car.

[8] As noted, *ante*, in his affidavit, Collins states he merely yelled, "I got the money, let him go."

17

the district attorney argued below, Collins did nothing to help the victim as he lay on the ground bleeding. And, before fleeing on foot, Collins told J.H., "don't say nothing, that didn't nobody see who did it."

In sum, the record of conviction amply supports Collins's concession, and the trial court's finding, that Collins was a major, if not *the* major, participant in the robbery that resulted in the victim's death.

          3.     Substantial evidence supports the finding that Collins acted with reckless disregard for human life.

The first factor under *Clark* considers Collins's awareness of and personal use of a lethal weapon, and the number of lethal weapons used. (*Clark*, *supra*, 63 Cal.4th at pp. 618-619.) To repeat, there is no evidence any weapons whatsoever were used during the robbery. Therefore, this too is a "neutral factor."

The second *Clark* factor—Collins's proximity to the killing and the events leading to it, and whether he had the opportunity to either restrain the crime or aid the victim (*Clark*, *supra*, 63 Cal.4th at pp. 619-620)—weighs heavily in favor of finding Collins acted with reckless disregard for human life. Again, there is no dispute Collins was present before and during the robbery, and that he actively participated in planning and executing it. And the evidence presented at trial, and reasonable inferences to be drawn from it, demonstrate nothing (or nobody) prevented him from either restraining Walker from violently robbing the victim or prevented him from assisting the victim. To the contrary, as the People contend in their brief, it was *Collins* who could not be restrained.

18

The victim pulled up and parked just after Collins and Walker were overheard talking about robbing "somebody." As the two men walked to the victim's car to rob him, A.H. "asked them not to do it." Collins ignored her and kept walking toward the car. J.H. testified that, as Collins punched the victim through the window of the car, Walker tried to pull Collins off but then Walker "just stood there." In response to J.H. telling the two assailants to stop hitting the victim because he was too old, Collins callously replied, "Fuck him." When D.M. grabbed Collins and tried to pull him away from the car to stop him from hitting the victim, Collins pushed her away, causing her to fall to the ground and injure herself. As noted *ante*, after *dropping* the elderly victim on the ground, Collins did nothing to assist him. And, after warning J.H. not to tell anyone who had robbed the victim, Collins fled on foot.

The third *Clark* factor considers "whether a murder came at the end of a prolonged period of restraint of the victims by defendant." (*Clark*, *supra*, 63 Cal.4th at p. 620, fn. omitted.) For example, "[w]here a victim is held at gunpoint, kidnapped, or otherwise restrained in the presence of perpetrators for prolonged periods, 'there is a greater window of opportunity for violence' [citation], possibly culminating in murder. The duration of the interaction between victims and perpetrators is therefore one consideration in assessing whether a defendant was recklessly indifferent to human life." (*Ibid.*) Collins argues the speed with which the crime was committed weighs in his favor. While conceding the speed with which the robbery and fatal injury took place seems to weigh against a finding of reckless indifference, somewhat confusingly the People argue

19

this factor weighs in the opposite direction because Collins was the main perpetrator who savagely beat and told Walker to drop the victim. We conclude this factor weighs strongly in neither direction.

The fourth *Clark* factor—Collins's knowledge of Walker's likelihood of killing (*Clark*, *supra*, 63 Cal.4th at p. 621)—also does not weigh in favor of a finding of reckless indifference. The record contains no evidence about what Collins may have known about Walker's predilection to violence, if any.

Finally, the record contains no evidence that Collins took any steps to minimize the risk of violence in the commission of the robbery, which weighs strongly in favor of finding he acted with reckless disregard for human life. (*Clark*, *supra*, 63 Cal.4th at pp. 621-622.) Collins stated in his affidavit that he did not plan or intend to harm the victim, and that he used only enough force to take money from the victim. But substantial evidence in the record shows otherwise. As already recounted, *ante*, Collins punched the victim through the window of the car when he refused to hand over his wallets. Collins then pulled the victim from his car, dangled him in the air as he rifled through the victim's pockets, and, after removing the victim's wallets from his pockets, Collins told Walker: "Let him go," or, "Drop him." The two men let go and the victim fell to the ground and hit the back of his head "real hard."

Although not all the *Clark* factors are present in this case or do not heavily weigh one way or the other, no factor is necessary or necessarily sufficient. (*Clark*, *supra*, 63 Cal.4th at p. 618.) But the factors that are present, in conjunction with the overwhelming

evidence that Collins was a major participant in the robbery, amply support the trial court's finding that Collins acted with reckless indifference for human life.

B.     *Collins's Age at The Time of the Offense Does Not Alter Our Conclusion.*

In his main and supplemental briefs, Collins also contends the trial court was required to consider he was 22[9] years old at the time of the offense as part of the totality of the circumstances when determining whether he acted with reckless disregard for human life. He argues that, even if we find substantial evidence supports the trial court's finding of reckless indifference, we should still reverse and remand for the trial court to consider his age and maturity as a factor. The Attorney General responds that, even if Collins's age at the time of the offense is a relevant consideration, it does not change the result in this case. We agree with the Attorney General.

    1.   Youth as a factor in the *Banks/Clark* analysis.

This court has previously addressed youth as a factor to be considered when determining whether a defendant was a major participant who acted with reckless disregard for human life. In *In re Harper*, *supra*, 76 Cal.App.5th 450, the defendant was sentenced to life without the possibility of parole (LWOP) after a jury convicted him of first degree murder and found true a robbery-homicide special circumstances, but he was subsequently resentenced to 25 years to life pursuant to *Miller v. Alabama* (2012) 567 U.S. 460. (*In re Harper*, at pp. 456, 458.) In the context of a *Banks/Clark* challenge to the validity of the special circumstances finding, the defendant argued the fact he was

---

[9] Collins was a little more than two months shy of his 23rd birthday.

21

only 16 years old at the time of his offense "decrease[d] his culpability." (*In re Harper*, at p. 466.)  The Attorney General initially argued youth is irrelevant to the *Banks*/*Clark* analysis, but subsequently "conceded youth may be one of several factors to consider in an appropriate case" but "it [did] not change the result in this case." (*In re Harper*, at p. 466.)

We noted, "The Legislature has already made youth a factor that must be considered when determining whether a 16- or 17-year-old found guilty of special circumstance murder should be sentenced to LWOP or 25 years to life. (§ 190.5, subd. (b).)  Youth must also be considered when, after having served 25 years, a minor defendant becomes eligible for parole at a youth offender parole hearing. (§ 3051, subd. (b)(3).)  At that time, the Board of Parole Hearings is required to 'give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law.' (§ 4801, subd. (c); see Cal. Code Regs., tit. 15, §§ 2445, subd. (b), 2446.)[10]  *Banks*, *supra*, 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522 did

_____

**10**  In his brief, Collins states the Legislature recently expanded the definition of "youth," "*under the current statutory scheme*," to include persons under the age of 26 years.  (Italics added.)  This is a slight overstatement.

Effective January 1, 2022, the fact a defendant is a "youth"—defined to mean "any person under 26 years of age on the date the offense was committed"—must be considered by a prosecutor during plea negotiations.  (§ 1016.7, subds. (a)(1), (b), as added by Stats. 2021, ch. 695, § 4.)  That definition of "youth" was incorporated into the determinate sentencing scheme, which now provides a rebuttable presumption that youthful offenders should be sentenced to the low term.  (§ 1170, subd. (b)(6)(B); Cal. Rules of Court, rule 4.420(e)(2); see *People v. Hilburn* (2023) 93 Cal.App.5th 189, 199-201.)

*[footnote continued on next page]*

not address youth, and nothing in those decisions indicates youth must be incorporated as a factor into the analysis of whether a special circumstance applies in the first place. However . . . those courts stated the factors they articulated were not exclusive or necessarily determinative.  (See *Banks*, at p. 803; *Clark*, at p. 618.)"  (*In re Harper*, *supra*, 76 Cal.App.5th at pp. 466-467, fn. omitted.)  "Although youth would appear to be an obvious consideration when determining whether a defendant acted with reckless indifference to human life, the defendant in *Clark* was a grown man at the time of the murder, so the Supreme Court had no occasion to decide whether youth was a factor. (See *Clark*, *supra*, 63 Cal.4th at p. 545.)"  (*In re Harper*, at p. 466, fn. 8.)

When we decided *In re Harper*, *supra*, 76 Cal.App.5th 450, three cases involving defendants who were minors at the time of their offenses had already held that a defendant's youth is an appropriate factor to consider when conducting the *Banks*/*Clark* analysis: *People v. Harris* (2021) 60 Cal.App.5th 939 (17-year-old) (*Harris*),[11] *In re Moore* (2021) 68 Cal.App.5th 434 (16-year-old), and *People v. Ramirez* (2021) 71

---

While perhaps suggestive of the Legislature's increasing awareness of the "psychological and neurological differences" between youth and adults over the age of 25 years (*Oliver*, *supra*, 90 Cal.App.5th at p. 486), the enactment of section 1016.7 does not support the assertion that a court *must always* consider a young adult defendant's age and maturity level when conducting the *Banks*/*Clark* analysis.

[11]  The Supreme Court granted review in *Harris*, *supra*, 60 Cal.App.5th 939 pending resolution of *Strong*, *supra*, 13 Cal.5th 698 and *People v. Lewis*, *supra*, 11 Cal.5th 952.  (*People v. Harris*, review granted, Apr. 28, 2021, S267802.)  Although the Supreme Court later dismissed review, it ordered that the court of appeal's opinion remain "noncitable and nonprecedential 'to the extent it is inconsistent'" with *Lewis*. (*People v. Harris*, review dism. Sept. 28, 2022, S267802; see Cal. Rules of Court, rule 8.1115(e)(2).)

Cal.App.5th 970 (15-year-old).  (See *In re Harper*, at pp. 467-470.)  A similar decision was subsequently decided.  (*People v. Keel* (2022) 84 Cal.App.5th 546 [15-year-old].)

This court expressly declined to decide whether youth is a factor that *must* be considered as a part of the *Banks*/*Clark* analysis.  Instead, we assumed without deciding that youth is an appropriate factor a court *may* consider under the totality of the circumstances.  (*In re Harper*, *supra*, 76 Cal.App.5th at p. 470.)  And, after considering the evidence and findings from the earlier resentencing proceeding pursuant to *Miller v. Alabama*, *supra*, 567 U.S. 460, we held the fact the defendant was 16 years old at the time of his offense in no way undermined our conclusion he was a major participant who acted with reckless disregard for human life.  "The evidence demonstrates petitioner willingly participated in the robbery despite knowing there was a very high risk—if not a certainty—the victim would die.  His conduct during the robbery (giving the shotgun to [his codefendant] as they entered the store, telling [another confederate] where she could find knives, taking merchandise from the store), and his statements during and after the robbery that reflected his callousness or indifference to whether the victim lived or died, all show he did not act like an immature, naïve, or impulsive adolescent."  (*In re Harper*, at p. 472.)  We concluded by observing, "it is one thing to say petitioner should eventually be eligible for a parole hearing because he was a minor at the time of the offense, and quite another to say he did not have the maturity to have acted with reckless disregard for human life."  (*Ibid.*)

Since then, several courts have considered young adulthood as a relevant factor. In *People v. Owens*, *supra*, 78 Cal.App.5th 1015, the defendant asked the trial court hearing his resentencing petition under former section 1170.95 to consider as relevant to the *Banks*/*Clark* analysis the fact he was only 19 years old at the time of the offense. (*Owens*, at p. 1020.) The trial court "expressly stated it had 'factored into the calculus' appellant's age of 19 years old when the crimes were committed," but denied resentencing after it found the defendant was a major participant who acted with reckless disregard. (*Owens*, at p. 1026.) The appellate court found substantial evidence supported the order and affirmed it. (*Ibid.*)

Similarly, the trial court in *People v. Mitchell* (2022) 81 Cal.App.5th 575 ruled that, "despite the fact that he was only 18," the defendant acted with reckless disregard for human life when he did nothing to help the victim after a shooting. (*Id.* at pp. 584-585.) The appellate court majority agreed. "We ascribe meaning to Mitchell's actions despite his age. Youth can distort risk calculations. Yet every 18 year old understands bullet wounds require attention. The fact of youth cannot overwhelm all other factors. [Citation.] Weight appropriate to Mitchell's youth is overborne here by the *Banks-Clark-Scoggins* factors that show Mitchell's indifference to his victim's life. As the trial court rightly concluded, 'Mr. Mitchell being young at the time is not a reason for this court to grant this petition because he was a major participant who acted with reckless indifference to human life.'" (*Mitchell*, at p. 595; but see *id.* at pp. 601-604 (diss. opn. of

Stratton, P.J.) [concluding, inter alia, defendant's age weighed against finding of reckless indifference to human life].)

The defendant in *People v. Jones* (2022) 86 Cal.App.5th 1076 (*Jones*) was 20 years old at the time of his offense. During the hearing on a resentencing petition under former section 1170.95—which took place less than one month after the decision in *Harris*, *supra*, 60 Cal.App.5th 939 had been issued—defense counsel expressly argued the trial court should consider youth when conducting the *Banks/Clark* analysis. (*Jones*, at pp. 1091-1092.) However, in its order denying the petition, "the court did not mention Jones's age or maturity level." (*Id*. at p. 1091.)

The appellate court agreed with the defendant that youth is necessarily a factor that must be considered as part of the totality of the circumstances.[12] (*Jones*, *supra*, 86 Cal.App.5th at pp. 1988, fn. 7, 1091.) After noting the trial court is presumed to have followed the law and considered all evidence properly presented, and the trial court's failure to specifically mention some evidence does not mean the court ignored it, the appellate court noted it was unlikely the trial court would have known to consider the

---

[12] *Jones* cited *In re Moore*, *supra*, 68 Cal.App.5th at pp. 454-455 for the proposition that "a defendant's youthful age *must* be considered." (*Jones*, *supra*, 86 Cal.App.5th at p. 1088, fn. 7, italics added.) The Attorney General contends this portion of *Jones* was unnecessary dictum, it is unsupported by the citation to *Moore*, and we are not bound to follow it. True, *In re Moore* merely held that a defendant's youth at the time of the offense "is a relevant factor" in the *Banks/Clark* analysis but did not hold courts *must* consider it. (*In re Moore*, at p. 454; see also *Jones*, at p. 1092, fn. 8 [noting *In re Moore* "specifically stated that 'youth is *a* relevant factor'"].) To the extent footnote 7 from *Jones* represents an actual holding as opposed to nonbinding dictum, we once more decline to decide whether youth is a factor that must always be considered. (See *In re Harper*, *supra*, 76 Cal.App.5th at p. 470.) As explained, *post*, Collins's age makes no difference here.

26

defendant's age and maturity. (*Jones*, at p. 1092.) "Although defense counsel at the resentencing hearing had mentioned Jones's age and characterized him as immature, the court was not specifically directed to the sentencing report [for a prior hearing pursuant to *People v. Franklin* (2016) 63 Cal.4th 261] or to *Harris*. Although counsel had cited *Miller* and [*Graham v. Florida* (2010) 560 U.S. 48], those cases were decided in the context of sentencing juveniles to life without possibility of parole." (*Ibid.*) And, while recognizing *Harris* and other prior decisions had addressed *adolescent* brain development as a consideration in the *Banks*/*Clark* analysis, "in the interest of justice" the appellate court reversed the order denying the petition and remanded "for the trial court to have a meaningful opportunity to consider Jones's youth as part of the totality of the circumstances germane to determining whether he was a major participant who acted with reckless indifference to human life." (*Jones*, at p. 1093.)

The defendant in *Oliver*, *supra*, 90 Cal.App.5th 466 did not address youthfulness at his resentencing hearing but for the first time on appeal argued the trial court erred by failing to consider the fact he was 23 years old at the time of his offense. (*Id*. at pp. 486, 488.) Because the resentencing hearing there took place before the decisions in *Harris*, *In re Moore*, or *Jones* had been issued, the appellate court concluded it was unlikely the trial court would have known to consider the defendant's age and maturity. (*Oliver*, at p. 488.) Unlike in *Jones*, however, the *Oliver* court did not decide whether the trial court was *required* to consider the defendant's age as part of the *Banks*/*Clark* analysis and it

27

did not remain for such consideration.[13]  Instead, *Oliver* held that, "*even if* the trial court was required to expressly consider Oliver's youth, any such error in this regard is harmless under the specific circumstances of this case." (*Oliver*, at p. 489, italics added, fn. omitted; see *id.* at p. 489, fn. 8 [concluding the harmless error standard under *People v. Watson* (1956) 46 Cal.2d 818 applied].)  "We note first that Oliver was 23 at the time of the crime.  Presumably, the presumption of immaturity weakens as a defendant approaches 26.  More importantly, however, the case law discussing the differences in brain development among youthful offenders (in contrast to their adult counterparts) stress two areas of divergence:  (1) their relative impulsivity; and (2) their vulnerability to peer pressure.  [Citation.]  There is no evidence in this case that Oliver's criminal behavior was motivated by either of these two factors." (*Id.* at p. 489.)

The *Oliver* court further explained, "[W]e are not here presented with a situation where a youthful offender was swept up in circumstances beyond his or her control that led to an unintended death.  Rather, the evidence discloses that Oliver was fully aware that [his confederate] intended to kill [the victim] if the opportunity arose and decided— after full consideration of the situation—that the risk was worth the reward.  Thus, he knew the incident involved a "'grave risk of death.'"  [Citation.]  Indeed, it is clear that Oliver was 'subjectively aware that his actions created a graver risk of death than any

---

**13** *Oliver* declined to find the defendant forfeited his argument by not raising it below.  (*Oliver*, *supra*, 90 Cal.App.5th at p. 488.)  The court also declined to decide "the appropriate definition of 'youthful' in this context" (presumably referring to the distinction in this context between adolescence and young adulthood), and "whether it is incumbent upon a trial court to expressly consider youth as part of its *Banks/Clark* analysis even when age is not raised by the defense." (*Oliver*, at p. 488.)

28

other armed robbery.' [Citation.] Nevertheless, he actively participated." (*Oliver*, *supra*, 90 Cal.App.5th at p. 489.) "As for peer pressure, there is no evidence that Oliver felt compelled to assist in [the] murder. Rather, the record discloses that he and [his confederate] had been engaging in drug transactions as partners for a number of years. And there is no indication that Oliver could not have declined to participate in the murder . . . had he chosen to." (*Ibid*.) "Finally, Oliver has failed to present on appeal or in the court below any specific support for the proposition that his level of maturity somehow lessened his culpability for this murder." (*Id*. at p. 490.)

Finally, five days before we issued our tentative decision in this appeal, the First Appellate District decided *People v. Pittman* (2023) 96 Cal.App.5th 400 (*Pittman*). The defendant there, who was 21 years old at the time, attended a house party with a 16- and 17-year-old. (*Id*. at pp. 403-404.) "All three were drunk." (*Id*. at p. 404.) When one of the minors suggested they rob a nearby liquor store, the defendant went off to get a gun. The defendant saw the victim in a parked truck with a prostitute "shooting up dope," so the defendant returned to the party and suggested he and the minors "'go whip [the victim's] ass.'" (*Ibid*.) The defendant grabbed three chisels from a bucket on the porch of the house and handed one each to the minors. As the three walked toward the truck, one of the minors ran up the victim and stabbed him in the head with the chisel. (*Id*. at p. 405.) A jury convicted the defendant of second degree murder. (*Id*. at p. 409.)

The defendant unsuccessfully petitioned the trial court under former section 1170.95 to vacate his conviction for implied malice second degree murder. (*Pittman*,

*supra*, 96 Cal.App.5th at pp. 403-404, 411-413.) On appeal, he argued the case should be remanded for the trial court to consider how his youth at the time of the offense affected his ability to form the culpable mental state to support a conviction for implied malice second degree murder. (*Id*. at pp. 404, 416.) The appellate court agreed with the defendant that his age at the time of the offense was relevant. "The policy interests underlying the felony-murder cases—that youth is relevant to a criminal defendant's ability to perceive risk and consequences, and therefore to the level of culpability—apply equally in the context of implied malice murder." (*Id*. at p. 417.) Because the trial court did not address youth during the resentencing hearing, the appellate court inquired whether that omission was harmless under state law, i.e., "whether there is a reasonable possibility that the failure to consider Pittman's youth impacted the trial court's decision." (*Id*. at p. 417, citing *Oliver*, *supra*, 90 Cal.App.5th at p. 489, fn. 8.)

The appellate court concluded "[i]nferences of immaturity and peer pressure may be drawn" from the mere fact that Pittman committed his offense in the company of a 16- and 17-year-old. (*Pittman*, *supra*, 96 Cal.App.5th at p. 418.) In addition, the court noted the facts of the crime—quickly switching the plan from robbing a liquor store to an unprovoked attack on the victim—demonstrated the defendant "acted impulsively and under the influence of 'transient rashness.'" (*Id*. at p. 418.) Moreover, the court observed the selection of the weapons "appears to have been spontaneous," and the motive for the attack was the sheer "happenstance" that the defendant saw the victim "'shooting up dope with a prostitute in his truck.'" (*Ibid*.) Finally, the court agreed with

the defendant that the "material characteristics of youth" were exacerbated by his intoxication and "'negative emotional arousal.'" (*Ibid*.) Therefore, the court reversed and remanded for the trial court to consider what, if any, impact the defendant's youth had on his ability to form the requisite mental state for second degree murder. (*Id*. at pp. 418-419.)

2. Collins's age at the time of his offense does not alter our conclusion that he acted with reckless disregard for human life.

At the hearing on Collins's petition conducted March 25, 2022, Collins did not argue the trial court was required to consider his age and maturity at the time of the offense when performing the *Banks*/*Clark* analysis. And perhaps for good reason. *Harris*, *supra*, 60 Cal.App.5th 939 (decided Feb. 16, 2021), *In re Moore*, *supra*, 68 Cal.App.5th 434 (decided Aug. 31, 2021), *People v. Ramirez*, *supra*, 71 Cal.App.5th 970 (decided Nov. 23, 2021) and *In re Harper*, *supra*, 76 Cal.App.5th 450 (decided Mar. 17, 2022), had already been decided, but those decisions merely stood for the proposition that *adolescence* at the time of the offense is a relevant factor. *Jones*, *supra*, 86 Cal.App.5th 1076 (decided Dec. 23, 2022)—the first decision to indicate, if not actually hold (see *ante*, fn. 12), that the age and maturity level of a young adult is a factor a court *must* consider—had not yet been decided. Therefore, it is unlikely the trial court or the parties

would have known to consider Collins's age and maturity level, and we decline to find he forfeited his claim on appeal.[14]  (See *Oliver*, *supra*, 90 Cal.App.5th at p. 488.)

Like the court in *Oliver*, however, we need not decide whether the trial court was required to consider Collins's age and maturity, because, even if it was required to do so, the error was harmless.  (*Oliver*, *supra*, 90 Cal.App.5th at p. 489.)  Collins was almost 23 years old at the time of the robbery, and "[p]resumably the presumption of immaturity weakens as a defendant approaches 26."  (*Ibid*.)  More importantly, there is no evidence in the record that Collins's actions or inactions in this case were motivated by "relative impulsivity" or "vulnerability to peer pressure."  (*Ibid*.)  Unlike in *Pittman*, where merely acting in concert with two minors raised an inference of the defendant's immaturity and susceptibility to peer pressure (*Pittman*, *supra*, 96 Cal.App.5th at p. 418), Collins and Walker were both adults.

As the People contend, Collins was an adult, not "a vulnerable child influenced into committing a crime with a potential for violence that his adolescent brain did not appreciate."  There is no evidence in the record to suggest anyone pressured Collins into taking part in the robbery, that he was merely "swept up in circumstances beyond his . . . control that led to an unintended death," or that he "felt compelled" to assist in the robbery.  (*Oliver*, *supra*, 90 Cal.App.5th at p. at p. 489.)  Unlike in *Pittman*, the facts here do not indicate the decision to rob the victim was spontaneous, that the motive to do so

---

[14]  For the same reason, we reject the People's argument that we should not address this claim of error because Collins introduced no evidence about his age and maturity during the hearing.

arose from a mere happenstance, or that Collins was intoxicated or acting under "'negative emotional arousal.'" (*Pittman*, *supra*, 96 Cal.App.5th at p. 418.) Collins was overheard talking about robbing "somebody," even Collins's own mother, when the victim drove up. By his own admission, Collins and Walker then agreed to rob the victim and proceeded to do so. Collins took the lead by demanding the victim's wallets and punching the victim when he refused to hand them over. After forcibly taking the wallets from the victim, Collins told Walker, "Let him go," or, "Drop him."

Likewise, there is nothing in the record to suggest Collins was prevented from backing out from taking part in the robbery had he wanted to. (*Oliver*, 90 Cal.App.5th at p. 489.) Quite to the contrary, he resisted two attempts to pull him off the victim (including one attempt from Walker), and, when told by J.H. not to hit an old man, Collins callously replied, "Fuck him." Finally, as we have already concluded, it is manifestly reasonable to infer from the evidence that Collins appreciated the risk of grave danger to the elderly and frail victim from a violent robbery, yet he proceeded anyway. Collins points to nothing to suggest "his level of maturity somehow lessened his culpability for this murder." (*Id.* at p. 490.)

## VI.

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER _____
                                                               J.

We concur:

RAMIREZ _____
                        P. J.

MENETREZ _____
                      J.